United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR W. TUTTLE, ERIC BRAUN; THE BRAUN FAMILY TRUST; and WENDY MEG SIEGEL, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SKY BELL ASSET MANAGEMENT, LLC, GARY R. MARKS, GEOFFREY M. GOTSCH, MICHAEL SELL, AGILE SKY ALLIANCE FUND, LP, AGILE GROUP LLC, GREENBERG & ASSOCIATES, INC. d/b/a AGILE INVESTORS, INC., NEAL GREENBERG, EDEN ROCK FINANCE FUND, LP, SOLID ROCK MANAGEMENT LIMITED, ERCM LLP, SANTO VOLPE, ERNST & YOUNG LLC, NIGHT WATCH PARTNERS, LP, SKY BELL OFFSHORE PARTNERS, LTD, PIPELINE INVESTORS, LP, SKY BELL SELECT, LP, WAILEA PARTNERS, LP, WAILEA CAPITAL GP, LLC, WAILEA ADVISORS, LP, PROSPECT CAPITAL, LLC, WILLIAM BELHUMEUR, ROTHSTEIN KASS & COMPANY, P.C., MCGLADREY & PULLEN, LLP, and DOES 1-15,<br><br>Defendants.<br>_____ / | No. C 10-03588 WHA<br><br>**ORDER DENYING MOTION TO REMAND** |

**INTRODUCTION**

In this removed prospective class action suit, plaintiffs allege that defendants breached their fiduciary duties by causing plaintiffs to incur substantial losses through investments in Ponzi

schemes run by Thomas Petters and Bernard Madoff. Plaintiffs move to remand. This order holds that plaintiffs' claims, *as pled*, are precluded by federal law under the Securities Litigation Uniform Standards Act. This problem is curable and plaintiffs will be allowed leave to re-plead and to omit the allegations now requiring preclusion. The motion to remand is **DENIED**.

**STATEMENT**

Plaintiffs Edgar Tuttle, Eric Braun, The Braun Family Trust and Wendy Meg Siegel brought this prospective class action on behalf of owners of limited partnership units in seven limited partnerships controlled by defendants Sky Bell Asset Management, LLC, and Gary Marks, the CEO of Sky Bell Asset Management. There are 25 named defendants, including the seven limited partnerships, their general partners, officers and auditors.

The following facts are taken from the complaint. Sky Bell Asset Management is alleged to have "coordinated all of the investments made by Plaintiffs, and Class and Subclass members in the Limited Partnerships" (Compl. ¶ 12). Defendants assured plaintiffs that their money would be placed in "massively diversified" investments by utilizing an investment strategy that would protect against the risk of "heavily concentrating the investments with just a few managers" (Compl. ¶ 3). Published statements by defendant Marks touted his diversification investment strategies (*see, e.g.*, Compl. ¶ 63). The unfortunate reality was that, unrevealed to plaintiffs, "the supposed strategy based on 'massive' diversification for some of the limited partnerships was an illusion. Marks, Sky Bell, and the other General Partner Defendants acted recklessly by heavily weighing the Limited Partners' investments with just a handful of fund managers" (Compl. ¶ 4). Despite claims from defendants Sky Bell and Marks that money was diversified among many money managers, the funds were actually heavily invested in Madoff and Petters Ponzi schemes (Compl. ¶ 52). Furthermore, had defendants "conducted minimal due diligence," they would have realized the clear red flags showing that plaintiffs' money was invested in blatant Ponzi schemes rather than in diversified investments (Compl. ¶ 4). Sky Bell and Marks still hold millions of dollars of plaintiffs' money, which they refuse to return (Compl. ¶ 53).

Plaintiffs were not only misled into believing that their money would be placed in "massively diversified" investments, they were also misled as to the "comprehensive due

2

1  diligence" practiced by defendants (Compl. ¶ 58).  Plaintiffs were repeatedly assured that they
2  would receive significant benefits by entrusting their money with Sky Bell and that defendant
3  Marks always conducted extensive and ongoing due diligence for every investment he made
4  (Compl. ¶¶ 60, 68).  Plaintiffs allege that defendant Marks also "held himself out to be a
5  knowledgeable and skilled investment manager" while making false representations as to his tax
6  knowledge and expertise in business (Compl. ¶¶ 2, 120, 124).

7  Plaintiffs allege five state law causes of action for: (1) breach of fiduciary duty, (2) aiding
8  and abetting breach of fiduciary duty, (3) negligence, (4) unjust enrichment, and (5) an
9  accounting.  Plaintiffs originally filed their complaint in state court, but defendant Rothstein, Kass
10 and Company, P.C. removed this action based on the Securities Litigation Uniform Standards
11 Act, 15 U.S.C. 78bb(f), or in the alternative, on the Class Action Fairness Act, 28 U.S.C. 1332.
12 The notice of removal stated that all defendants who had been served consented to removal.

13 Plaintiffs now move to remand.  They assert that there are no federal claims in their
14 complaint and that defendants removed the action to federal court by improperly asserting that the
15 SLUSA and CAFA support jurisdiction.  In the context of their CAFA argument, plaintiffs
16 request permission to conduct limited discovery regarding the prospective class members' states
17 of citizenship, which is information asserted to be in the hands of defendants at this time, that
18 would be relevant to the existence of jurisdiction under CAFA.  Oral argument was heard on
19 November 18, 2010.

**ANALYSIS**

21 "If at any time before final judgment it appears that the district court lacks subject matter
22 jurisdiction, the case shall be remanded."  28 U.S.C. 1447(c).  A defendant may remove an action
23 to federal court based on federal question jurisdiction or diversity jurisdiction.  28 U.S.C. 1441.
24 However, the "'strong presumption' against removal jurisdiction means that the defendant always
25 has the burden of establishing that removal is proper," and all ambiguity is resolved in favor of
26 remand to state court.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).
27 Here defendants have the burden of showing that jurisdiction exists under SLUSA — namely that
28 plaintiffs have, in fact, alleged violations of securities laws — or under CAFA.

3

### 1. JURISDICTION UNDER SLUSA

Congress enacted SLUSA in response to certain unintended consequences of the Private Securities Litigation Reform Act of 1995. PLRSA was meant to target the abuses of class-action litigation involving nationally traded securities by imposing heightened pleading requirements. "Rather than face the obstacles set in their path by the Reform Act, plaintiffs and their representatives began bringing class actions under state law, often in state court." *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 83 (2006). The Supreme Court has said that SLUSA should be read broadly to cover claims where there is "deception" that "coincides" with a securities transaction — claims that are accordingly viewed as violations of federal law even when brought as state law claims. *Id.* at 85. The Supreme Court warned that a "narrow reading of the statute would undercut the effectiveness of the 1995 Reform Act and thus run contrary to SLUSA's stated purpose, viz., 'to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives'" of the PSLRA. *Id.* at 86 (citation omitted).

Under SLUSA:

> (1) No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> > (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> >
> > (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) Removal of covered class actions
>
> > Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. 78bb(f)(1)–(2). Conversely, "[i]n an action that has been removed from a State court pursuant to paragraph (2), if the Federal court determines that the action may be maintained in State court pursuant to this subsection, the Federal court shall remand such action to such State court." 15 U.S.C. 78bb(f)(3)(D). In other words, SLUSA removes certain actions brought in the

4

form of state law claims. 15 U.S.C. 78bb(f)(1)–(2). SLUSA also precludes removed claims from proceeding as state law claims in either state or federal court. *See Proctor v. Vishay Intertechnology, Inc.*, 584 F.3d 1208, 1220 (9th Cir. 2009). "The preclusion provision is often called a preemption provision; the Act, however, does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 636 n.1 (2006). This is not to say, however, that a plaintiff, after removal, may not amend the complaint to escape SLUSA preclusion.

Plaintiffs concede that this case involves a "covered class action" and is in connection with the "purchase or sale of a covered security" (*see* Dkt. No. 34 at 9), and argue solely that the complaint does not allege factual predicates arising from "misrepresentations or omissions" that would be precluded by SLUSA. When making this determination the focus is on the gravamen of the complaint: "when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) (Alsup, J.) (citation omitted).

On the other hand, not within SLUSA's preclusive scope are garden-variety state law claims lacking any reference to material omissions or misrepresentations. *Proctor*, 584 F.3d at 1223. Securities fraud claims involve an intent to deceive at the time of the suspect representation or omission. *See, e.g.*, *Merck & Co., Inc. v. Reynolds*, 130 S. Ct. 1784, 1796–97 (2010). State law claims for mismanagement of investment funds, such as for breach of fiduciary duty or contract, by contrast, involve a failure to live up to a promise after that promise is made or violating the standards of care of such fiduciaries. *See, e.g.*, *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863–64 (Cal. Ct. App. 1991). The former is precluded under the SLUSA. The latter is not. SLUSA was intended to root out fraud claims pled as state-law mismanagement claims but not to preclude state-law mismanagement claims.

5

### A.     Application of General Principles in Similar Contexts

The parties cite numerous decisions. Most either do not analyze the application of the "misrepresentation or omission" provision of the SLUSA, or analyze notably different allegations. Two of these decisions do analyze the application of the "misrepresentation or omission" provision and concern complaints that contain similar allegations to the present action, although arising on motions to dismiss rather than motions to remand. Nevertheless, the analysis in finding misrepresentation or omission allegations to be precluded by the SLUSA is similar.

In *Barron v. Igolnikov*, No. 09 Civ. 4471, 2010 WL 882890 (S.D.N.Y. Mar. 10, 2010), the plaintiff brought a putative class action on behalf of investors who held limited partnership interests in "funds-of-funds," which "invested with Madoff indirectly by allocating a portion of their assets to four feeder funds" that had direct accounts with Madoff. *Id.* at *2. The issue in *Barron*, as in the present case, was whether plaintiffs alleged a misrepresentation or omission. Also similar to the present action, the plaintiffs in *Barron* asserted state law causes of action for breach of fiduciary duty, negligence, and aiding and abetting for the defendants' failure to warn their clients against investing with Madoff and continued funneling of money into Madoff-related feeder funds while collecting management fees. *Barron* held: "In light of the Supreme Court's command that SLUSA be construed expansively, it is enough that this fraudulent scheme was in connection with the trading in the nationally listed securities in which Madoff claimed to be engaged." *Id.* at *5. In order to hold that SLUSA applied, *Barron* only found it necessary that the complaint asserted deception in connection with a securities transaction, not the deception of plaintiff herself — *i.e.*, it was enough that plaintiff alleged that Madoff deceived investors generally.

Similarly, in *Levinson v. PSCC Services, Inc.*, No. 3:09-CV-00269, 2009 WL 5184363 (D. Conn. Dec. 23, 2009), the plaintiffs brought a class action against the custodians of their retirement accounts who invested the plaintiffs' money in Madoff funds. The plaintiffs alleged that they were misled into believing that their funds were safe and conservatively invested while the defendants ignored several red flags that should have alerted them to Madoff's Ponzi scheme. *Id.* at *1. The plaintiffs asserted state law causes of action including breach of fiduciary duty and

6

1  breach of contract, as well as fraud-based claims. After determining that the fraud-based claims
2  were precluded by SLUSA, the decision also found the breach of fiduciary duty and contract
3  claims to be precluded because: "Plaintiffs allege that Defendants failed to safeguard Plaintiffs'
4  assets by not maintaining possession of Plaintiffs' funds, neglecting to independently verify the
5  investment returns reported by [Bernard L. Madoff Investment Securities LLC], and ignoring
6  evidence of Madoff's Ponzi scheme. . . . [T]he Complaint [also] states elsewhere that Defendants
7  *intended* to misrepresent their obligations . . . to induce Plaintiffs to enter into the agreements."
8  *Id.* at *13 (emphasis in original). *Levinson* highlighted that the non-fraud-based claims relied on
9  allegations of misrepresentations "as an integral part of the conduct giving rise to the claims."
10 *Ibid.*

11  Plaintiffs argue that *Barron* and *Levinson* are distinguishable from this action because in
12 those decisions the defendants had actual knowledge of "red flags." In their reply brief, plaintiffs
13 try to characterize their own allegations of defendants' behavior as ignorance of the Ponzi
14 schemes and red flags, rather than misrepresentations regarding the safety of the subject
15 investments (*see* Dkt. No. 34 at 8). This is not an accurate characterization of the allegations in
16 the complaint at hand.

17           **B.     Application to Our Complaint**

18  Plaintiffs cannot avoid SLUSA by utilizing artful drafting which refrains from using the
19 exact words "misrepresentation" or "omission." *U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 842
20 (9th Cir. 2007), *overruled as to other holdings by Proctor v. Vishay Intertechnology Inc.*, 584
21 F.3d 1208 (9th Cir. 2009).

22  The complaint includes many passages to the effect that the alleged conduct is based on
23 misrepresentations. Mentioned repeatedly in the complaint is how defendants "assured" plaintiffs
24 that their money would be placed in "massively diversified investments," which was "supposedly
25 accomplished by investing the limited partnerships' money in what are known as 'funds-of-
26 funds,' i.e., other limited partnerships that own a variety of investments, rather than individual
27 stocks or other assets" (Compl. ¶ 3). The manner in which their money was to be invested, a
28 strategy that involved "massive diversification," assertedly was an illusion (Compl. ¶ 4).

7

Plaintiffs describe misrepresentations without using the word. For example, "Agile Sky Defendants repeatedly emphasized that the fund's money was diversified among a large number of managers and asset classes [but] . . . in reality, a substantial portion of the Agile Sky Limited Partnership's assets were concentrated in funds that put the money into Ponzi schemes" (Compl. ¶¶ 75, 76, 133). The essence of the allegations in the complaint is that defendants misrepresented the manner in which plaintiffs' money was to be invested.

In their reply brief, plaintiffs argue that in fact the gravamen of the complaint is that "Defendants breached their fiduciary duties (or aided and abetted such breaches) through the lax manner in which they managed the Plaintiffs' money" (Dkt. No. 34 at 7). They argue that the allegations concerning misrepresentations are extraneous details. But their prevalence betrays this characterization.

True, *In re Charles Schwab* held that a breach of fiduciary duty claim there was not based on misrepresentations or omissions and hence was not within SLUSA's scope. *Schwab*, 257 F.R.D. at 551. *Schwab*, however, was factually different. There the plaintiffs "readily agree[d] that [defendant] properly disclosed the change in its concentration policy but argue[d] that the change was nevertheless improper." *Ibid.* Here, plaintiffs do not concede the propriety of defendants' disclosures. As such, *Schwab* is not on point.

In sum, the gravamen of the instant complaint is that there were misrepresentations that plaintiffs' money was to be invested in massively diversified investments, when in fact almost all the money was funneled into funds-of-funds that invested in Ponzi schemes resulting in "effectively no diversification among managers or asset classes" (Compl. ¶ 110). As such, the SLUSA applies to plaintiffs' claims and remand is not allowed.

    **2.    CLAIM PRECLUSION UNDER SLUSA**

Whenever the removal provision pursuant to SLUSA is met, "SLUSA creates a federal defense to certain covered class actions, prohibiting those actions from going forward in state *or* federal court," entitling the removing party to dismissal of the action. *Proctor*, 584 F.3d at 1220 (emphasis in original). Under SLUSA, no covered class action based on state law by any private party alleging a misrepresentation or omission of material fact in connection with the purchase or

8

1 sale of securities *may be maintained* in any federal court. 15 U.S.C. 78bb(f)(1). SLUSA
2 "authorizes removal and dismissal based on the allegations in the complaint and does not require
3 any additional evidentiary showing from either party." *Saxton*, 494 F.3d at 842 (citation omitted).
4 In other words, where the action is removable under SLUSA's removal provision, "SLUSA
5 unquestionably requires the dismissal of the precluded claim[s]." *Proctor*, 584 F.3d at 1226. A
6 plaintiff, however, "*may* avoid SLUSA dismissal through amendment." *Saxton*, 494 F.3d at 843
7 (emphasis in original). Thus, SLUSA "does not prohibit amendment of the complaint after
8 removal" and plaintiffs may be given an opportunity to amend to avoid SLUSA preclusion. *Ibid.*
9 Defendants acknowledged this at oral argument.

10 Plaintiffs may do so by pleading claims that either comply with the PRLSA's
11 requirements for pleading a federal securities claim, or avoiding the "misrepresentation or
12 omission" pitfalls of SLUSA by pleading true state law mismanagement claims such as breach of
13 fiduciary duty or contract, short of allegations that sound in fraud. SLUSA does not preclude
14 breach of fiduciary duty or contract claims unless they sound in fraud and are thus properly
15 viewed as mislabeled securities law claims. In other words, if plaintiffs wish to carry on with the
16 action they are required to file an amended complaint that pleads claims that avoid the preclusive
17 nature of SLUSA. Depending on the allegations and claims asserted in an amended complaint,
18 the issue of remand may have to be reanalyzed under the above SLUSA preclusion principles (or
19 on other grounds). *See, e.g.*, *Schuster v. Gardner*, 319 F. Supp. 2d 1159, 1164–65 (S.D. Cal.
20 2003).

### 3. JURISDICTION UNDER CAFA

Defendants assert that, should SLUSA be found not to govern this action, alternative grounds for federal jurisdiction exist under CAFA. District courts have original jurisdiction under CAFA in any class action where: (1) the amount in controversy exceeds $5,000,000, (2) the aggregate number of proposed class members is 100 or greater, and (3) there is minimal diversity between the parties. 28 U.S.C. 1332(d)(2). CAFA, however,

> [S]hall not apply to any class action that solely involves a claim: (A) concerning a covered security as defined under 16(f)(3) of the Securities Act of 1933 (15 U.S.C. 78p(f)(3)) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E)) . . .

9

28 U.S.C. 1332(d)(9)(A).  The purpose of this exception "to avoid disturbing in any way the federal vs. state court jurisdictional lines already drawn in the securities litigation class action context by the enactment of the Securities Litigation Uniform Standards Act."  S. REP. NO. 109-14, at 45 (2005).  In the broadest sense, a "security" is an instrument that "might be sold as an investment."  *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).  The parties agree that this action involves "covered securities" (Dkt. No. 1 at 5; Dkt. No. 34 at 9).  The instant action thus falls within this CAFA exception rendering jurisdiction nonexistent under CAFA, though it exists under SLUSA.  There is therefore no need to reach plaintiffs' request for limited discovery, which was only relevant to application of CAFA's minimal diversity requirements.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand is **DENIED**.  The complaint will be dismissed as precluded by SLUSA unless plaintiffs file an amended complaint to avoid SLUSA preclusion or amend their complaint to comply with the PRLSA's requirements.  Within 14 days of this order, plaintiffs must file a motion to file an amended complaint on the normal 35-day track seeing to cure the foregoing deficiencies.  A proposed amended complaint must be appended to such motion, and the motion should clearly explain why the proposed complaint overcomes the deficiencies stated herein. Counsel ought to be mindful and careful in the extent to which various allegations are incorporated by reference.

**IT IS SO ORDERED.**

Dated:  November 19, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

10