United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDGAR W. TUTTLE, ERIC BRAUN, THE BRAUN FAMILY TRUST, and WENDY MEG SIEGEL, on behalf of themselves and all others similarly situated,

    Plaintiffs,

  v.

SKY BELL ASSET MANAGEMENT, LLC, GARY R. MARKS, GEOFFREY M. KITSCH, MICHAEL SELL, AGILE SKY ALLIANCE FUND, LP, AGILE SKY ALLIANCE FUND GP, LLC, AGILE GROUP LLC, GREENBERG & ASSOCIATES, INC., d/b/a AGILE INVESTORS, INC., NEAL GREENBERG, EDEN ROCK FINANCE FUND, LP, SOLID ROCK MANAGEMENT LIMITED, ERCM LLP, SANTO VOLPE, ERNST & YOUNG LLC, NIGHT WATCH PARTNERS, LP, SKY BELL OFFSHORE PARTNERS, LTD., PIPELINE INVESTORS, LP, SKY BELL SELECT, LP, WAILED PARTNERS, LP, WAILED CAPITAL GP, LLC, WAILED ADVISORS, LP, PROSPECT CAPITAL, LLC, WILLIAM BELHUMEUR, ROTHSTEIN KASS & COMPANY, P.C., MCGLADREY & PULLEN, LLP, and DOS 1–15,

    Defendants.
                               /

No. C 10-03588 WHA

**ORDER GRANTING MOTION TO AMEND COMPLAINT AND DENYING RENEWED MOTION TO REMAND**

**INTRODUCTION**

In this removed prospective class action suit, this order **GRANTS** a motion to amend the complaint but **DENIES** a renewed motion to remand. Due to amendments, the action no longer

falls under SLUSA. This order, however, finds jurisdiction under CAFA. The order permits parties to begin discovery on all issues.

**STATEMENT**

Plaintiffs Edgar Tuttle, Eric Braun, The Braun Family Trust and Wendy Meg Siegel brought this prospective class action on behalf of owners of limited partnership units in seven limited partnerships controlled by defendants Sky Bell Asset Management, LLC, and Gary Marks, the CEO of Sky Bell Asset Management. There are 25 named defendants, including the seven limited partnerships, their general partners, officers and auditors.

The following facts are taken from the amended complaint. Sky Bell Asset Management served as General Partner or Co-Partner in seven Limited Partnerships (First Amd. Compl. ¶ 1). Sky Bell, and the other General Partner Defendants, assumed the duty to perform adequate due diligence; deal fairly and honestly with Limited Partners; manage the investments properly; manage and operate the investments in the best interest of the Limited Partners and execute transactions in accordance with the goals and objectives of the Limited Partners with a permissible degree of risk (*id.* at 19, 20). The General Partner Defendants failed to fulfill these duties by failing to properly conduct due diligence and investigate the funds in which the money was invested (*id.* at 22). The Auditor Defendants failed to "comply with applicable auditing standards" which would have revealed these breaches of duty (*id.* at 24). All defendants failed to "use such skill, prudence, and diligence as other members of the investing profession commonly possess and exercise." As a result, plaintiffs lost "tens of millions of dollars of their savings and retirement nest eggs" (*id.* at 1).

Plaintiffs filed this action in state court, alleging five state law causes of action: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) negligence; (4) unjust enrichment, and (5) an accounting. Defendant Rothstein, Kass & Company, P.C. removed this action in August 2010. The notice of removal stated that all defendants who had been served consented to removal. Plaintiffs filed a motion for remand which was denied in the November 2010 order because there was federal jurisdiction under SLUSA (Dkt. No. 42 at 8).

The order gave leave for plaintiffs to amend the complaint to remove the allegations of fraud that brought the action within SLUSA's scope (*id.* at 9).

## ANALYSIS

**1. JURISDICTION UNDER SLUSA.**

Defendants argue that plaintiffs' state-law claims are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). The preemption provision states:

> (1) No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging —
>
> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

The November 2010 order took issue with specific language in the complaint. "Mentioned repeatedly in the complaint is how defendants 'assured' plaintiffs that their money would be placed in 'massively diversified investments,' which was 'supposedly accomplished by investing the limited partnerships' money in what are known as 'funds-of-funds,' *i.e.*, other limited partnerships that own a variety of investments, rather than individual stocks or other assets' (Compl. ¶ 3). The manner in which their money was to be invested, a strategy that involved 'massive diversification,' assertedly was an illusion (Compl. ¶ 4). Plaintiffs describe misrepresentations without using the word" (Dkt. No. 42 at 7, 8). The problematic language, however, has been removed or altered. As the order said, the defect in the original complaint was curable. Plaintiffs have cured it by removing the fraud claims.

Defendants contend that plaintiffs' amended complaint still alleges a misrepresentation or omission of material fact (Rothstein Opp. 2). To support this claim, defendants highlight specific language in the amended complaint in an attempt to show that the allegations of fraud have been subtly cloaked rather than removed (*id.* at 3, 4). For example, defendants, borrowing the quoted language from the amended complaint, state that plaintiffs allege that "instead of being 'committed' to performing due diligence, or selecting 'purported' combinations of managers

3

1  and making investments in accordance with the Limited Partnerships' 'investment purpose[s]',
2  the 'General Partner Defendants did little or no due diligence regarding the investments into
3  which they funneled the Limited Partners' money'" (*id.* at 3).

4     Defendants offer this passage to show that plaintiffs have merely changed the language
5  but not the substance of their claim (*id.* at 2). Defendants fail to recognize that by changing the
6  language, plaintiffs have necessarily altered the gravamen of their claims as well. Whereas the
7  original complaint focused on the "illusion" that the investments were being handled by
8  knowledgeable staff, the amended complaint emphasizes that defendants had an obligation to act
9  with due care and failed to do so. Thus, plaintiffs' mere use of terms such as "purported" does
10 not prove that they are alleging misrepresentation.

11    Any remaining references to misrepresentations or omissions can be properly described as
12 extraneous details. "When an allegation of misrepresentation in connection with securities trade,
13 implicit or explicit, operates as a factual predicate to a legal claim, that ingredient is met. To be a
14 factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not
15 merely an extraneous detail." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D.
16 Cal. 2009) (citation omitted). Defendants state that "it is clear that [the amended complaint]
17 includes a class action claim involving 'a misrepresentation or omission of a material fact in
18 connection with the purchase or sale of covered security', 15 U.S.C. 78bb(f)(1)(A) and that all of
19 its allegations of breach of fiduciary duty and negligence flow from that central fact" (Rothstein
20 Opp. 7, 8). Defendants do not state that this "central fact" is a factual predicate for any of the
21 claims plaintiffs have put forth. Allegations of misrepresentation in the amended complaint will
22 only establish SLUSA jurisdiction if they are factual predicates to plaintiffs' claims. Because the
23 state claims, as pled in the amended complaint, are not predicated upon a misrepresentation in
24 connection with a securities transaction, those claims are not preempted.[*]

25    The previous order stated that *In re Charles Schwab* was "not on point" because it was
26 "factually different" from the instant case (Dkt. No. 42 at 8). *In re Charles Schwab* held that a

---

[*] Given the holding above, it is unnecessary to analyze the purport of the exact holding of Judge Dorsey in the various *Levinson* decisions.

4

1  breach of fiduciary duty claim was not based on misrepresentations or omissions and hence was
2  not within SLUSA's scope. *In re Charles Schwab*, 257 F.R.D. at 551.  There, the plaintiffs
3  conceded the propriety of the defendants' disclosures.  By contrast, in the instant action, plaintiffs
4  did not concede, in their original complaint, the propriety of defendants' disclosures.  Because the
5  amended complaint no longer refers to any improper disclosures or misrepresentations, this
6  distinction is no longer relevant.  The amended complaint alleges a breach of fiduciary duty that
7  is not based on misrepresentations and is not within the scope of SLUSA.  Thus, the holding of *In
8  re Charles Schwab* applies.

9  Defendants also offer case law in support of their contention that SLUSA should apply
10 (Rothstein Opp. 10–13).  In *Stoody-Broser v. Bank of America , N.A.,* No. C 08-02705 JSW,
11 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009), the plaintiffs brought a class action on behalf of
12 trust beneficiaries whose trusts were administered by the defendant.  The plaintiffs alleged breach
13 of fiduciary duty in the administration of the trusts.  The court considered whether the plaintiffs
14 had properly pled a state law fiduciary duty claim or whether the plaintiffs were merely
15 attempting to dodge SLUSA through artful pleading.  The decision held that, although the
16 plaintiffs did not expressly plead fraud or misrepresentation, the claim was "premised on inherent
17 misrepresentations" and was thus preempted by SLUSA.

18 The *Stoody-Broser* decision focused on the language of the complaint.  In the complaint,
19 the plaintiffs alleged that the defendants kept the plaintiffs uniformed; failed to document their
20 practices and engaged in "unlawful, unfair, and fraudulent business policies."  By contrast, the
21 amended complaint does not contain any language that is indicative of fraud beyond the
22 aforementioned extraneous details.  Thus, the instant action is factually distinguishable from
23 *Stoody-Broser*.

24 Similarly, *Felton v. Morgan*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006), and *Daniels v.
25 Morgan*, No. 09-cv-02800,—F. Supp. 2d.—, 2010 WL 4024604 (W.D. Tenn. Sept. 30, 2010),
26 each focused on the language of the respective complaints.  While those decisions found fraud to
27 be the underlying basis of the non-fraud claims, for the reasons stated, that is not the case here.
28

5

### 2. JURISDICTION UNDER CAFA.

Defendants assert that, even if SLUSA does not apply, there is federal jurisdiction under CAFA. Under CAFA, district courts have original jurisdiction in any class action where: (1) the amount in controversy exceeds $5,000,000, (2) the aggregate number of proposed class members is 100 or greater, and (3) there is minimal diversity between the parties. 28 U.S.C. 1332(d)(2). The burden of proving CAFA jurisdiction on removal rests with the defendants who must prove the existence of jurisdictional facts with competent proof. *Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992) (citation omitted).

#### A. The Amount in Controversy.

Defendants contend that the amount in controversy exceeds $5,000,000. The amended complaint alleges that the defendants caused the plaintiffs to lose "tens of millions of dollars." (First Amd. Compl. ¶ 1). Since plaintiffs seek disgorgement of these funds, the amount in controversy necessarily exceeds $5,000,000. Thus, the jurisdictional amount is met.

#### B. The Aggregate Number of Proposed Class Members.

Defendants maintain that the proposed class exceeds 100 class members. They offer as proof the declaration of Joel Wolosky, counsel for defendant Rothstein Kass. Wolosky asserts, under penalty of perjury, that there are at least 107 potential class members in the three partnerships for which Rothstein Kass served as auditor (Wolosky Decl. ¶ 2). Defendants also offer the declaration of defendant Gary Marks who swears that he identified a total of 158 potential class members (Marks Decl. ¶ 3).

Notably, plaintiffs do not contend that the proposed class is smaller than 100 class members. Rather, plaintiffs cast doubt on the methodology by which defendants have come to this conclusion. Plaintiffs state that: "It is not clear that Marks used an appropriate methodology to reach his conclusion about the number of class members" (Reply Br. ¶ 11). Marks, by his own admission, "compiled a list of all of the names of the Limited Partners [and] then removed all persons or entities that [he] knew were officers, directors, and agents of the defendants, as well as members of theirs families, heirs, successors or assigns and any entity in which defendants have or had a controlling interest" (Marks Decl. ¶ 3). Marks does not explain or describe how he

6

defined "agent" or determined if people were family members.  Plaintiffs find similar fault with the Wolosky Declaration.  Wolosky arrives at the conclusion that there are least 107 class members using data from the year 2006 (Wolosky Decl. ¶ 3).  Plaintiffs contend that it is unclear whether this four-year-old data is sufficiently up-to-date.  Based on the proof defendants have offered, however, the requisite number of proposed class members is satisfied, at least subject to a later (but timely) showing to the contrary.

### C. Minimal Diversity.

In order to satisfy the minimal diversity required by CAFA, defendants must show that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. 1332(d)(2).  Defendants offer public documents to establish that two of the named plaintiffs are from California and the third is from Florida, while defendants are, by plaintiffs' own allegations, citizens of Hawaii, California, Colorado, Iowa, Minnesota, the Cayman Islands, the British Virgin Islands, England and Wales.  Plaintiffs do not contest these facts.  Thus, minimal diversity is satisfied.  Since defendants have established the necessary factors, CAFA jurisdiction will apply unless plaintiffs can eventually show otherwise.

The burden to establish the existence of an exception to CAFA jurisdiction rests with plaintiffs.  Plaintiffs request permission to conduct limited discovery regarding the prospective class members' states of citizenship (Reply Br. ¶ 13).  This information is relevant to the existence of exceptions to jurisdiction under CAFA.  The court has "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980).  At this time, the parties are permitted to conduct discovery on *all* issues, including jurisdiction.

### D. Exceptions to CAFA Jurisdiction.

(9)  [CAFA] shall not apply to any class action that *solely* involves a claim:

(A)  concerning a covered security as defined under 16(f)(3) [1] of the Securities Act of 1933 (15 U.S.C. 78p (f)(3) [2]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb (f)(5)(E));

(B)  that relates to the internal affairs or governance of a corporation or other form of business enterprise and that

7

> arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized; or
>
> (C) that relates to the rights, duties (including fiduciary duties), and obligations relating to or created by or pursuant to any security (as defined under section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. 77b (a)(1)) and the regulations issued thereunder).

28 U.S.C. 1332(d)(9)(A–C) (emphasis added). The previous order held that CAFA jurisdiction was "nonexistent" since the parties had already agreed that the claims concerned a covered security (Dkt. No. 42 at 10). In respect to the original complaint, this analysis was correct. The *amended* complaint, however, demands a new analysis. "If a complaint contains a claim implicating one of CAFA's exceptions, *but also involves other non-excepted claims*, the case should remain in federal court." *Anwar v. Fairfield Greenwich Ltd.*, 676 F. Supp. 2d 285 (S.D.N.Y. Dec. 23, 2009) (emphasis added). While the second amended complaint does contain claims relating to securities, there are also non-excepted claims, including a claim for simple negligence. It cannot, therefore, be said that the instant action *solely* involves a claim concerning a covered security as required by the statutory language. Thus, the exception to CAFA jurisdiction set out in subsection (A) does not apply.

Defendants contend that subsection (B) does not apply (Sky Bell Opp. 6). This provision exempts any class action "that relates to the internal affairs or governance of a corporation or other form of business enterprise and that arises under or by virtue of the laws of the State in which such corporation or business enterprise is incorporated or organized." 28 U.S.C. 1332(d)(9)(B). Thus, the internal affairs exception precludes federal jurisdiction over a class action if two conditions are met: the class action solely involves a claim that (1) relates to corporate internal affairs; and (2) arises under the laws of the state where the company is incorporated. Defendants contend that neither of these conditions is met (Sky Bell Opp. 6). *First*, defendants maintain that "plaintiffs' class action, which involves claims against numerous defendants, including negligence claims against outside auditors, cannot be said to relate solely to the inter-relationship between one company's general partner and its limited partners" (*id.* at 7). *Second*, defendants assert that since there are 25 separate defendants, incorporated in

8

numerous states, "plaintiffs' claims could not arise from a single state where the company is incorporated." Plaintiffs do not set forth an argument to the contrary. Thus, the subsection (B) exception does not apply.

As for subsection (C), this provision exempts any class action that *solely* involves a claim that "relates to the rights, duties, and obligations relating to or created by or pursuant to any security." 28 U.S.C. 1332(d)(9)(C). Plaintiffs state that "CAFA expressly excludes claims related to covered securities and those relating to fiduciary duties 'to avoid disturbing in any way the federal vs. state court jurisdictional lines already drawn' by SLUSA." In their reply and at oral argument, plaintiffs rely on *In Re Textainer Partnership Securities Litigation* to support this proposition. No. C 05-0969 MMC, 2005 WL 1791559 (N.D. Cal. July 27, 2005) (Chesney, J.).

True, the facts in *Textainer* are similar to the instant action. As here, *Textainer* dealt with a class action brought on behalf of holders of limited partnership units. The defendants were all general partners of the Textainer partnerships. The plaintiffs challenged a proposed sale of the partnership's assets as fundamentally unfair and alleged that the defendant issued materially misleading proxy statements. The plaintiffs brought a *sole claim for relief* for breach of fiduciary duty under California law. The action was removed to federal court under CAFA. Plaintiffs sought remand under 1332(d)(9)(C) on the grounds that "CAFA specifically excludes state law fiduciary duty claims from its application." *Id.* at 3. The decision held that "*[b]ecause the sole claim* in th[is] action concerns, *exclusively*, 'fiduciary duties relating to or created by or pursuant to' the limited partnership interests in the Textainer partnerships, and those interests are securities, the Court finds the instant action falls within this additional CAFA exception." *Id.* at 7 (emphasis added).

*Textainer* is distinguishable. There, the plaintiffs brought *only one cause of action* for breach of fiduciary duty. Thus, the action could literally be said to *solely* relate to breach of fiduciary duty related to or pursuant to a security. By contrast, in the instant action, the plaintiffs bring five separate claims including a claim for negligence. It cannot be said, therefore, that plaintiffs' claims relate *solely* to a breach of fiduciary duty concerning a security.

Our Court of Appeals has not yet interpreted this provision of CAFA. The Second Circuit, however, has stated that "the phrase 'solely involves' ensures that federal jurisdiction under CAFA cannot be defeated by adding a claim that falls within a § 1332(d)(9) exception to a class action complaint advancing one or more other claims." *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 32 (2d Cir. 2010). Thus, in order to fall under the exception, plaintiffs' class action must "*present only a single claim* grounded in the terms of a document that creates and defines a security." As that is not the case here, the instant action does not fall under the Section 1332(d)(9)(C) exception. CAFA jurisdiction applies.

*Greenwich* followed an earlier Second Circuit decision that this order finds persuasive. In *Estate of Pew v. Cardarelli*, the Second Circuit held that subsection (C) only applies to claims that "seek to enforce the terms of instruments that create and define securities," such as "a certificate of incorporation, an indenture, a note, or some other corporate document," or seek to enforce "duties imposed on persons who administer securities." 527 F.3d 25, 31–33 (2d Cir. 2008).

The Second Circuit in *Estate of Pew* relied on the legislative history of subsection (C) including passages of the Senate Judiciary Committee Report. The Report stated: "The subsection 1332(d)(9) exemption to new section 1332(d) jurisdiction is also intended to cover *disputes over the meaning of the terms of a security*, which is generally spelled out in some formative document of the business enterprise, such as a certificate of incorporation or a certificate of designations." S. REP. NO. 109-14, at 45 (emphasis added). Under *Estate of Pew*, it is not enough for a claim to merely tangentially relate to a security; the terms of the security must provide the basis for the claim. Thus, subsection (C) does not apply in the instant action because the plaintiffs' claims, as pled, are not grounded in a document that creates and defines securities.

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion to amend the complaint is **GRANTED**. The renewed motion to remand is **DENIED**.

10

The action will proceed in federal court. All parties will now be permitted to conduct discovery on all issues. The action will proceed pursuant to the recently issued case management order.

**IT IS SO ORDERED.**

Dated: January 21, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE