GOLD BENNETT CERA & SIDENER LLP
SOLOMON B. CERA (State Bar No. 99467)
GWENDOLYN R. GIBLIN (State Bar No. 181973)
C. ANDREW DIRKSEN (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
E-mail: scera@gbcslaw.com
E-mail: ggiblin@gbcslaw.com
E-mail: tbright@gbcslaw.com

Attorneys for Plaintiffs on behalf of
themselves and all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EDGAR W. TUTTLE; ERIC BRAUN; THE
BRAUN FAMILY TRUST; and WENDY
MEG SIEGEL, on behalf of themselves and
all others similarly situated,

                  Plaintiffs,

     v.

SKY BELL ASSET MANAGEMENT, LLC;
GARY R. MARKS; GEOFFREY M.
GOTSCH; MICHAEL SELL; AGILE SKY
ALLIANCE FUND, LP; AGILE SKY
ALLIANCE FUND GP, LLC; AGILE
GROUP LLC; GREENBERG &
ASSOCIATES, INC. d/b/a AGILE
INVESTORS, INC.; NEAL GREENBERG;
EDEN ROCK FINANCE FUND, LP; SOLID
ROCK MANAGEMENT LIMITED; ERCM
LLP; SANTO VOLPE; ERNST & YOUNG
LLC; NIGHT WATCH PARTNERS, LP;
SKY BELL OFFSHORE PARTNERS, LTD;
PIPELINE INVESTORS, LP; SKY BELL
SELECT, LP; WAILEA PARTNERS, LP;
WAILEA CAPITAL GP, LLC; WAILEA
ADVISORS, LP; PROSPECT CAPITAL,
LLC; WILLIAM BELHUMEUR;
ROTHSTEIN KASS & COMPANY, P.C.;
MCGLADREY & PULLEN, LLP; and DOES
1 – 15,

                  Defendants.

Case No.: 10-CV-03588 WHA

**THIRD AMENDED CLASS ACTION
COMPLAINT FOR:**

**(1) BREACH OF FIDUCIARY DUTY;**
**(2) AIDING AND ABETTING BREACH
    OF FIDUCIARY DUTY;**
**(3) NEGLIGENCE;**
**(4) UNJUST ENRICHMENT; AND**
**(5) FOR AN ACCOUNTING**

**JURY TRIAL DEMANDED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND OVERVIEW ...................................................................- 1

JURISDICTION AND VENUE.........................................................................- 2

PARTIES ....................................................................................................- 2

    A.    Plaintiffs ......................................................................................- 2

    B.    Defendants...................................................................................- 3

            (1)    Sky Bell Defendants ...................................................- 3

            (2)    Agile Sky Defendants.................................................- 4

            (3)    Eden Rock Defendants ...............................................- 5

            (4)    Night Watch Defendants .............................................- 6

            (5)    Offshore Partners Defendants .....................................- 6

            (6)    PipeLine Defendants ..................................................- 6

            (7)    Select Defendants.......................................................- 6

            (8)    Wailea Defendants .....................................................- 7

            (9)    General Partner Defendants.........................................- 7

            (10)  Auditor Defendants ....................................................- 8

    C.    Doe Defendants ...........................................................................- 8

    D.    Agency/Joint Venture ...................................................................- 8

    E.    Aiding and Abetting .....................................................................- 8

FACTUAL ALLEGATIONS.............................................................................- 9

    A.    Sky Bell Asset Management .........................................................- 9

    B.    Sky Bell Asset Management's Investment Strategy.........................- 10

    C.    The Sky Bell Limited Partnerships................................................- 10

            (1)    Agile Sky Limited Partnership ...................................- 10

            (2)    Eden Rock Limited Partnership ..................................- 11

             (3)    Night Watch Limited Partnership ...............................- 12

             (4)    Offshore Partners Limited Partnership.........................- 13

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

(5)    PipeLine Limited Partnership ................................................- 13 -

(6)    Select Limited Partnership ..............................................- 14 -

(7)    Wailea Limited Partnership ............................................- 14 -

D.    Sky Bell's "Asset Allocation Planning" ..........................- 15 -

E.    Role of the Auditor Defendants ......................................- 16 -

CLASS ACTION ALLEGATIONS ..................................................- 18 -

CAUSES OF ACTION .......................................................................- 21 -

First Cause of Action: Breach of Fiduciary Duty ........................- 21 -

Second Cause of Action: Aiding and Abetting Breaches of Fiduciary Duty ..............- 22 -

Third Cause of Action: Negligence ..............................................- 24 -

Fourth Cause of Action: Unjust Enrichment ................................- 36 -

Fifth Cause of Action: For an Accounting ...................................- 37 -

PRAYER FOR RELIEF ......................................................................- 38 -

JURY DEMAND ................................................................................- 39 -

Pursuant to the Court's June 8, 2011 Order [Dkt. No. 152], Plaintiffs, for their Second Amended Class Action Complaint, allege as follows.[1]

## INTRODUCTION AND OVERVIEW

1.     This is a class action brought on behalf of owners of limited partnership units (the "Limited Partners") in seven limited partnerships controlled by Defendants Sky Bell Asset Management, LLC ("Sky Bell") and Gary R. Marks ("Marks"), along with co-general partners in some of the limited partnerships (collectively, "the General Partner Defendants," as defined below). The General Partner Defendants owed the Limited Partners a fiduciary duty, but failed to fulfill that duty. The Defendants' failure to fulfill their obligations ultimately led to the Limited Partners incurring huge losses due to Ponzi schemes run by convicted Thomas J. Petters of Minnesota, as well as a separate Ponzi scheme run by the Bernard Madoff. As a result, the Limited Partners have lost tens of millions of dollars of their savings and retirement nest eggs in these and other investments imprudently made by the Sky Bell Defendants.

2.     Defendant Marks mismanaged the Limited Partners' capital contributions. He was in over his head and unable to fulfill his most basic obligations as a fiduciary. Marks, Sky Bell, and the other General Partner Defendants did little or no due diligence regarding the investments into which they funneled the Limited Partners' money. They abandoned their fiduciary obligations and irresponsibly relied on third-parties. Marks, Sky Bell, and the other General Partner Defendants failed to confirm that these third-parties did anything to investigate the funds into which the Limited Partners' money was invested. Instead, they collected substantial management fees for doing nothing more than passing along the Limited Partners' money to other money managers who were secretive about how the money would be invested. As to certain of the Sky Bell limited partnerships, Marks, Sky Bell, and the other General Partner Defendants irresponsibly failed to diversify the Limited Partners' investments.

---

[1]     Pursuant to the Court's June 8, 2011 Order [Dkt. No. 152 at 3:3-6] requesting that the proposed third amended complaint by accompanied by a "submission identifying what is new," Plaintiffs attach hereto as Exhibit A a redlined version of the Second Amended Complaint. All substantive changes appear in paragraph 113 and its subparagraphs.

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1         3.      Marks, Sky Bell, and the other General Partner Defendants acted in derogation of

their fiduciary obligations by heavily weighting the Limited Partners' investments with just a

handful of fund managers.  Some of those fund managers were themselves heavily invested in

Ponzi schemes, resulting in the Limited Partners' investments being substantially -- and in some

cases entirely -- wiped out.  Had Marks, Sky Bell, and the other General Partner Defendants

conducted even minimal due diligence, they would have acted on clear red flags showing that the

funds into which they placed the Limited Partners' money were imprudent.

         4.      The conduct of Marks, Sky Bell, and the other General Partner Defendants

constitutes a breach of fiduciary duty owed to the Limited Partners, *i.e.,* the Class and Subclass

members in this action.  In addition, each of the Defendants identified below aided and abetted

the breaches of fiduciary duty committed by Marks, Sky Bell, and the other General Partner

Defendants.  They were closely involved in Sky Bell's operations and had access to Sky Bell's

books and records.  They facilitated and provided substantial assistance to Marks, Sky Bell, and

the other General Partner Defendants in breaching their obligations to the Limited Partners and

causing the damage complained of herein.

<strong><u>JURISDICTION AND VENUE</u></strong>

         5.      The amount in controversy exceeds the jurisdictional minimum of this Court.

         6.      Most, if not all, of the Defendants conducted business in the City and County of

San Francisco.  At relevant times, Defendants Prospect Capital, LLC, Rothstein Kass &

Company, P.C., and McGladrey & Pullen, LLP maintained offices in San Francisco, California.

In addition, many of the alleged wrongful acts occurred in San Francisco, California.

<strong><u>PARTIES</u></strong>

**A.**    **<u>Plaintiffs</u>**

         7.      Plaintiff Edgar W. Tuttle holds limited partnership interests in Eden Rock Limited

Partnership, Night Watch Limited Partnership, Select Limited Partnership, and Wailea Limited

Partnership, and has been damaged as a result of the conduct complained of herein.

8.      Plaintiff Eric Braun and the Braun Family Trust hold limited partnership interests in Agile Sky Limited Partnership and PipeLine Limited Partnership, and have been damaged as a result of the conduct complained of herein.

9.      Plaintiff Wendy Meg Siegel holds limited partnership interests in Offshore Partners Limited Partnership, and has been damaged as a result of the conduct complained of herein.

**B.      Defendants**

10.      The following persons and entities are defendants in this action.  A chart summarizing the relationships among the defendants is set forth in Appendix A, which is incorporated herein.

**(1)      Sky Bell Defendants**

11.      Defendant Sky Bell Asset Management, LLC ("Sky Bell") is a Delaware limited liability company with its principal place of business in San Diego, California.  Defendant Sky Bell coordinated all of the investments made by Plaintiffs, and Class and Subclass members in the Limited Partnerships.  It served as a general partner or co-general partner in all seven Limited Partnerships.  It also served as the investment advisor or co-investment advisor for all seven Limited Partnerships.  Sky Bell is controlled by Defendant Marks and, during their respective tenures, by Defendants Gotsch and Sell as well.

12.      Defendant Gary Robert Marks ("Marks") is the Chief Executive Officer, Chairman, and sole member of Sky Bell and a resident of the State of Hawaii.  Marks was responsible for, among other things, organizing Sky Bell's internal infrastructure, serving as director of Sky Bell's investment committee, and coordinating Sky Bell's research and development.

13.      Defendant Geoffrey M. Gotsch ("Gotsch") was President of Sky Bell Asset Management LLC from June 2004 until April 2009.  He also served as Sky Bell's Chief Compliance Officer until January 2007.  On information and belief, Gotsch is a resident of the State of Florida.  Gotsch's responsibilities at Sky Bell included overseeing the firm's day to day

operations, managing the division of marketing and client services with Gary Marks, serving as president of Sky Bell's investment committee, and compliance operations.

14.     Defendant Michael Sell ("Sell") was Sky Bell's Chief Investment Officer as of January 1, 2007.  On information and belief, Sell is a resident of the State of Colorado.  He previously worked at Defendant Agile Group until he left in 2006 to become a hedge fund consultant.  After joining Sky Bell, Sell served as coordinator of Sky Bell's due diligence worldwide."

15.     At times herein, Defendants Sky Bell, Marks, Gotsch, and Sell are collectively referred to as the "Sky Bell Defendants."

### (2)     Agile Sky Defendants

16.     Defendant Agile Sky Alliance Fund, LP ("Agile Sky Limited Partnership") is a Delaware limited partnership.

17.     Defendant Agile Sky Alliance Fund GP, LLC ("Agile Sky GP") is a Delaware limited liability company.  Its principal place of business has, at various times, been in Florida, Colorado, and/or Hawaii.  Agile Sky GP is the General Partner of the Agile Sky Limited Partnership.  Agile Sky GP is controlled by Defendants Sky Bell Asset Management and Agile Group.

18.     Defendant Agile Group LLC ("Agile Group") is a Delaware limited liability company with its principal place of business in Boulder, Colorado.  Defendant Agile Group is a co-manager of the Agile Sky Limited Partnership, along with Defendant Sky Bell Asset Management.

19.     Defendant Greenberg & Associates Securities, Inc. d/b/a Agile Investors, Inc. ("Greenberg & Associates") is a Colorado corporation with its principal place of business in Boulder, Colorado.

20.     Defendant Neal R. Greenberg ("Greenberg") is a principal of Greenberg & Associates, Inc. d/b/a/ Agile Investors, Inc., which controls Agile Group.  On information and belief, Greenberg is a resident of the State of Colorado.

21.     Defendant Rothstein Kass & Company, P.C. ("Rothstein Kass") is an accounting firm with offices in San Francisco, Walnut Creek, Beverly Hills, and other U.S. cities, as well as an offshore office in the Cayman Islands.  Defendant Rothstein Kass served as an auditor for certain Limited Partnerships, including the Agile Sky Limited Partnership, Night Watch Limited Partnership, and Pipeline Limited Partnership, and possibly other Limited Partnerships as well.

22.     At times herein, Defendants Agile Sky Limited Partnership, Agile Sky GP, Agile Group, Greenberg & Associates, Greenberg, Rothstein Kass, and the Sky Bell Defendants (identified above) are collectively referred to as the "Agile Sky Defendants."

### (3)     Eden Rock Defendants

23.     Defendant Eden Rock Finance Fund, L.P. ("Eden Rock Limited Partnership") is a Delaware limited partnership.

24.     Defendant Solid Rock Management Limited ("Solid Rock) is a British Virgin Islands company with its principal place of business in London, England.  Defendant Solid Rock served as co-general partner in the Eden Rock Finance Fund, L.P. along with Defendant Sky Bell.

25.     Defendant ERCM LLP ("Eden Rock Capital Management"), formerly known as Eden Rock Capital Management Ltd., is a limited liability partnership incorporated under the laws of England and Wales with its principal place of business in London, England.  Defendant Eden Rock Capital Management served as an investment advisor for the Eden Rock Limited Partnership.  The firm is a hedge fund sponsor that serves high net worth individuals, money management firms, fund-of-funds, and banks.  It invests in alternative investment markets around the world using equity arbitrage, fixed income, event-driven, and opportunistic strategies to make its hedging investments.

26.     Defendant Santo Volpe ("Volpe") is a director of Defendant Solid Rock, as well as a director, principal, Chief Investment Officer, and Chairman of Defendant Eden Rock Capital Management.  On information and belief, Volpe is a resident of England.  Defendant Santo Volpe is a director of Defendant Solid Rock.  He is also a director, principal, Chief Investment

1    Officer, and Chairman of Eden Rock Capital Management.  In 2001, he co-founded Eden Rock

2    Capital Management.

3        27.    Defendant Ernst & Young LLC ("E&Y") is a firm of Chartered Accountants that

4    served as an auditor for the Eden Rock Limited Partnership.

5        28.    At times herein, Defendants Eden Rock Limited Partnership, Solid Rock, Eden

6    Rock Capital Management, Volpe, E&Y, and the Sky Bell Defendants (identified above) are

7    collectively referred to as the "Eden Rock Defendants."

8                          **(4)    Night Watch Defendants**

9        29.    Defendant Night Watch Partners, L.P. ("Night Watch Limited Partnership") is a

10   Delaware limited partnership.

11       30.    At times herein, Defendants Night Watch Limited Partnership, the Sky Bell

12   Defendants (identified above), and Rothstein Kass (identified above) are collectively referred to

13   as the "Night Watch Defendants."

14                         **(5)    Offshore Partners Defendants**

15       31.    Defendant Sky Bell Offshore Partners, Ltd. ("Offshore Partners Limited

16   Partnership") is a Cayman Islands exempted company.

17       32.    At times herein, Defendants Offshore Partners Limited Partnership and the Sky

18   Bell Defendants (identified above) and are collectively referred to as the "Offshore Partners

19   Defendants."

20                         **(6)    PipeLine Defendants**

21       33.    Defendant PipeLine Investors, L.P. ("PipeLine Limited Partnership") is a

22   Delaware limited partnership.

23       34.    At times herein, Defendants Pipeline Limited Partnership, the Sky Bell

24   Defendants (identified above), and Rothstein Kass (identified above) are collectively referred to

25   as the "PipeLine Defendants."

26                         **(7)    Select Defendants**

27       35.    Defendant Sky Bell Select, L.P.  ("Select Limited Partnership") is a Delaware

28   limited partnership.

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA                     - 6 -

36.     At times herein, Defendants Select Limited Partnership and the Sky Bell Defendants (identified above) are collectively referred to as the "Select Defendants."

**(8)     Wailea Defendants**

37.     Defendant Wailea Partners, L.P. ("Wailea Limited Partnership") is a Delaware limited partnership.

38.     Defendant Wailea Capital GP, LLC ("Wailea Capital GP") is a limited liability company.  Defendant Wailea Capital GP is the General Partner in the Wailea Limited Partnership.

39.     Defendant Wailea Advisors, LP ("Wailea Advisors") is a limited partnership. Defendant Wailea Advisors served as investment advisor for the Wailea Limited Partnership.

40.     Defendant Prospect Capital LLC ("Prospect Capital") is a limited liability company that, at relevant times, maintained its principal place of business in San Francisco, California, and now identifies a principal place of business in Burlingame, California.  Prospect Capital controls Wailea Capital GP along with Defendant Sky Bell.  The firm advises institutional investors and fund-of-funds.

41.     Defendant William Belhumeur ("Belhumeur") is a principal of Prospect Capital, LLC and a resident of California.

42.     Defendant McGladrey & Pullen ("McGladrey & Pullen") is an Iowa limited liability partnership with its principal place of business in Minnesota and offices in San Francisco, San Jose, and Mountain View, California, among other locations.  McGladrey & Pullen served as an auditor for the Wailea Limited Partnership.

43.     At times herein, Defendants Wailea Limited Partnership, Wailea Capital GP, Wailea Advisors, Prospect Capital, Belhumeur, McGladrey & Pullen, and the Sky Bell Defendants (identified above) are collectively referred to as the "Wailea Defendants."

**(9)     General Partner Defendants**

44.     At times herein, the term "General Partner Defendants" is used to refer collectively to those defendants that were general partners in one or more of the Limited

1   Partnerships, *i.e.,* Defendants Sky Bell, Agile Sky GP, Solid Rock, and Prospect Capital.  Each

2   of these defendants is more fully described above.

3                **(10)**    **Auditor Defendants**

4           45.    At times herein, the term " Auditor Defendants" is used to refer collectively to

5   those defendants who provided accounting and auditing services for the Limited Partnerships,

6   *i.e.,* Defendants Rothstein Kass, E&Y, and McGladrey & Pullen.  Each of these defendants is

7   more fully described above.

8          **C.**    **Doe Defendants**

9           46.    The true names and capacities, whether individual, corporate, associate or

10  otherwise, of Does 1 through 15 are unknown to the Plaintiffs, who therefore sue those

11  Defendants by such fictitious names.  Each Doe Defendant conspired to commit, aided and

12  abetted, and otherwise is responsible for the acts and occurrences alleged herein.  The Class

13  members' damages were proximately caused by such Doe Defendants.

14         **D.**    **Agency/Joint Venture**

15          47.    At all relevant times, each Defendant was an agent, servant, employee, partner,

16  and joint venturer of the other Defendants.  At such times, each Defendant was acting within the

17  course and scope of its relationship as agent, servant, employee, partner, or joint venturer of the

18  other Defendants.  Each Defendant had actual and/or constructive knowledge of the acts of the

19  other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the

20  wrongful acts of each co-Defendant, and/or retained the benefits of the wrongful acts.

21         **E.**    **Aiding and Abetting**

22          48.    Each of the Defendants aided and abetted, encouraged, and rendered substantial

23  assistance to the General Partner Defendants in breaching their obligations to the Class members.

24  In taking action to aid and abet, and substantially assist, the commission of these wrongful acts,

25  each Defendant knew that his or its conduct would substantially assist the accomplishment of the

26  alleged wrongdoing.

27

28

**FACTUAL ALLEGATIONS**

A.   **Sky Bell Asset Management**

49.   In the early to mid-1990s, Marks reportedly had success investing in a hedge fund and began investing on his own.  Other people began to ask Marks for investment advice.  Then, in 1999, Marks created Sky Bell so he could run his own hedge fund.  In the following years, Marks added Geoff Gotsch as President and Michael Sell as Chief Investment Officer of Sky Bell.  As of December 2006, Sky Bell had several investment funds and an estimated $325 million in assets under management.

50.   Since 1999, Sky Bell has established more than a dozen limited partnerships, though some closed for various reasons.  When a limited partnership was closed, the Sky Bell Defendants shifted the Limited Partners' money to another Sky Bell fund.  At issue in this litigation are the seven Limited Partnerships that existed as of October 2007, i.e., the Agile Sky Limited Partnership, the Eden Rock Limited Partnership, the Night Watch Limited Partnership, the PipeLine Limited Partnership, the Offshore Partners Limited Partnership, the Select Limited Partnership, and the Wailea Limited Partnership.

51.   In March 2008, Sky Bell received large redemption requests from its investors.  Marks and Sky Bell then decided to close all but two funds: the Select Limited Partnership and the Wailea Limited Partnership.  Much of the assets in those limited partnerships were indirectly invested in funds affiliated with Bernard Madoff or Thomas Petters.  The public learned of the Petters fraud in September 2008 and of the Madoff fraud on December 11, 2008.

52.   Four days later, on December 15, 2008, Sky Bell changed its principal contact information to "c/o Beecher Consulting" in San Diego, California.  Beecher purportedly is a firm that specializes in "financial consulting for small businesses," including "account reconciliation, researching discrepancies, audit preparation, . . . [and] financial statement creation."  Defendants Marks and Sky Bell still hold millions of dollars of the Limited Partners' money, which they have refused to return.

**B.    Sky Bell Asset Management's Investment Strategy**

53.    Sky Bell creates multi-manager portfolios (*i.e.,* fund-of-funds) that have different risk profiles.  Strategies include various forms of equity and bond trading, as well as asset based lending, arbitrage strategies, and options trading.  Sky Bell purportedly selected combinations of managers who had complimentary strategies.  To gain access to these exclusive money managers, investors had to work through Sky Bell.

54.    In directing the investment of the Limited Partners' capital, Defendant Marks and Sky Bell had a fiduciary duty to provide substantial safeguards against non-market risks, which duty they breached.

55.    Hedge fund managers are expected to perform significant and valuable services for their clients.  Conducting extensive, ongoing due diligence on behalf of investors is an essential role played by a hedge fund manager.  Marks failed to adhere to appropriate and prudent practices in investing the Limited Partners' capital.  Defendants Marks and Sky Bell placed up to 100% of a limited partnership's money into the hands of other fund managers.  In turn, these fund-of-funds put significant portions of their assets into a limited number of funds, including those investing in the Madoff and Petters schemes.  The Sky Bell investors received no benefit from this fund-of-funds investment strategy as there was insufficient diversification among assets and money managers.  Instead, Defendants Marks and Sky Bell simply withdrew management fees and then handed the Limited Partners' entire investments over to others, without adding any value.

**C.    The Sky Bell Limited Partnerships**

56.    At issue in this litigation are the seven Limited Partnerships that existed as of October 2007, i.e., Agile Sky Limited Partnership, Eden Rock Limited Partnership, Night Watch Limited Partnership, PipeLine Limited Partnership, Offshore Partners Limited Partnership, Select Limited Partnership, and Wailea Limited Partnership.

**(1)    Agile Sky Limited Partnership**

57.    The investment purpose of the Agile Sky Limited Partnership was intended to preserve principal, while making absolute returns through use of a "multi-manager" investment

strategy, thereby diversifying investments.  Investments in the Agile Sky Limited Partnership were subject to a monthly "management fee."  The management fee was calculated at an annual rate of 1% of the value of the limited partnership.  In addition, investors paid a monthly "performance fee," which was calculated at an annual rate of 20% of the limited partnership's net profits.

58.     A substantial portion of the Agile Sky Limited Partnership's assets were concentrated in funds that put the money into Ponzi schemes.  Agile Group froze all of its client accounts in Fall 2008, right around the time the Petters scheme was revealed and shortly before the Madoff scheme became public.

59.     Defendant Agile Group was co-manager of the Agile Sky Limited Partnership, along with Defendant Sky Bell Asset Management.  Agile Group is currently under investigation by the Colorado Department of Regulatory Agencies, Division of Securities.  Agile Group closed its office in Boulder, Colorado at the end of 2009.  Defendant Neal Greenberg suddenly resigned from all of his positions with Agile Group effective October 5, 2009.

### (2)     Eden Rock Limited Partnership

60.     The Eden Rock Limited Partnership was created in August 2004, with Defendants Sky Bell and Solid Rock as co-general partners.  Defendant Santo Volpe is a director of Defendant Solid Rock.  He is also a director, principal, Chief Investment Officer, and Chairman of Defendant Eden Rock Capital Management.

61.     Defendant Eden Rock Capital Management purportedly conducted much of the fund's due diligence.  Defendant Sky Bell was the "investment manager."  Defendant E&Y serves as the limited partnership's auditor.  Investments in the Eden Rock Limited Partnership were subject to a monthly "management fee."  The management fee was calculated at an annual rate of 1.0% of the value of the limited partnership.  The Eden Rock Defendants also collected a monthly "performance fee" calculated at an annual rate of 20% of the limited partnership's net profits.  The Eden Rock Limited Partnership was to be managed such that a substantial percentage of its capital would be placed with managers principally investing in short-term trade finance notes.

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

62.     Despite the Eden Rock Defendants' supposed due diligence efforts, they neglected to obtain even basic information regarding the limited partnership's investments.  They failed to realize that the Eden Rock Limited Partnership was heavily invested in real estate and real estate loans.  In early 2008, the Eden Rock Limited Partnership was to be wound down.  Ordinarily, this would have resulted in liquidation of the Limited Partners' interests and the return of their money.  However, many of the fund-of-funds in which the money was invested were also "winding down," thereby creating a liquidity problem that prevented investors' money from being returned.

63.     The Eden Rock Defendants' breaches of duty are so egregious that they no longer know the value of the Eden Rock Limited Partnership due to their negligence in investing the Limited Partners' capital.

### (3)     Night Watch Limited Partnership

64.     The Night Watch Limited Partnership was established in June 2000 with Defendant Sky Bell as the General Partner.  At relevant times, Defendant Rothstein Kass served as the auditor.  Investments in the Night Watch Limited Partnership were subject to a monthly "management fee" calculated at an annual rate of 1.0% of the value of the limited partnership, plus a monthly ''performance fee" calculated at an annual rate of 10% of the limited partnership's net profits.

65.     The investment purpose of the Night Watch Limited Partnership was to preserve capital while making returns of approximately 15% annually over any 3-year period through investing in asset based lending, fixed income trading, convertible arbitrage, multi-strategy, global macro, and high-yield bond timing.  This was to be accomplished by investing the Limited Partnership's capital with appropriate hedge fund managers. All of the Night Watch Limited Partnership's money was placed in other Sky Bell funds, specifically Agile Sky, Eden Rock, PipeLine, Offshore Partners, and one other (former) Sky Bell limited partnership.

66.     In breach of fiduciary obligations, the Night Watch Limited Partnership's assets were entirely invested in other limited partnerships run by Sky Bell and Marks, thereby exposing

investors to the same negligent mismanagement, fiduciary breaches, and other losses as in those funds.

### (4)    Offshore Partners Limited Partnership

67.    The investment purpose of the Sky Bell Offshore Partners, L.P. ("Offshore Partners Limited Partnership") was to use various leveraged strategies to preserve principal and make absolute returns.  Sky Bell serves as its General Partner.  Defendant Rothstein Kass was identified as the auditor at relevant times.

68.    Interests in the Offshore Partners Limited Partnership were subject to a monthly "management fee" calculated at an annual rate of 1.0% of the value of the limited partnership, plus a monthly "performance fee" calculated at an annual rate of 10% of the Limited Partnership's net profits.

69.    In breach of fiduciary obligations, as of November 2008, more than 50% of Offshore Partners Limited Partnership's assets were in investments that were apparently invested in funds affiliated with Thomas Petters.

### (5)    PipeLine Limited Partnership

70.    The investment purpose of the PipeLine Limited Partnership was to place the partnerships' capital in non-leveraged funds focusing on PIPE (private investment in public entities) and CDO (collateralized debt obligation) funds.  Sky Bell was the General Partner and managed the fund.  Defendants Rothstein Kass served as the fund's auditor at relevant times. More than 28% of the PipeLine Limited Partnership's assets were invested in the Agile Sky Limited Partnership.  Due to the negligent mismanagement and breach of fiduciary obligations of the Sky Bell Defendants, a substantial percentage of the limited partnership's capital has been lost.

71.    Interests in the PipeLine Limited Partnership were subject to a monthly "management fee" calculated at an annual rate of 1.5% of the value of the limited partnership, plus a monthly "performance fee" calculated at an annual rate of 10% of the Limited Partnership's net profits.

72.     In late 2007, the Sky Bell Defendants announced an intention to dissolve the PipeLine Limited Partnership.

**(6)     Select Limited Partnership**

73.     The Select Limited Partnership was formed in October 2007, with Sky Bell as the General Partner.  Defendant Rothstein Kass was identified as the auditor at relevant times.  Investments in the Select Limited Partnership were subject to a monthly "management fee" calculated at an annual rate of 1.0% of the value of the limited partnership, plus a monthly "performance fee" calculated at an annual rate of 10% of the limited partnership's net profits.

74.     The investment purpose of the Select Limited Partnership was to invest in low volatility, concentrated fund-of-funds focused exclusively on asset based lending.

75.     Defendants Marks and Sky Bell funneled 100% of the Select Limited Partnership's assets into fund-of-funds affiliated with Thomas Petters.  There was no diversification among managers or asset classes.  No substantive due diligence was performed by the Sky Bell Defendants regarding these investments.  The Petters "investments" were purportedly asset backed loans to large companies, such as Costco and Sam's Club.  Defendants Marks and Sky Bell could not have conducted adequate due diligence because no such assets existed and the transactions never occurred.  It now appears that investors in the Select Limited Partnership will incur a 100% loss.

**(7)     Wailea Limited Partnership**

76.     The Wailea Limited Partnership was established in August 2007.  Included among its General Partners are Defendant Sky Bell and Defendant Prospect Capital.  Defendant McGladrey & Pullen was identified as the auditor at relevant times.  Interests in the Wailea Limited Partnership were subject to a monthly "management fee" calculated at an annual rate of 0.5% of the value of the limited partnership, plus a monthly "performance fee" calculated at an annual rate of 10% of the Limited Partnership's net profits.

77.     The investment purpose of the Wailea Limited Partnership was to make leveraged investments, while also seeking long term capital growth and low volatility through use of a market neutral strategy.  Through a series of investments, 100% of this fund's capital was

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

- 14 -

1    funneled into any intermediary entity, Senator Fund SPC ("Senator").  Senator put all of its

2    investments into Madoff's funds.  Had the Wailea Defendants monitored the investment and

3    conducted appropriate due diligence, they would have found that Senator was not able to

4    properly document the bona fides of the investments it made.

5           D.      **Sky Bell's "Asset Allocation Planning"**

6           78.     Investors in all of the Limited Partnerships were invited to take advantage of Sky

7    Bell's "Financial and Asset Allocation Planning" services, which included financial planning

8    assistance and investment advisory services."  In reality, Defendant Marks lacked the requisite

9    degree of tax expertise, financial acumen, and sophistication to prudently manage the Limited

10   Partners' capital.  He mismanaged the Limited Partners' capital.  In May 2008, Marks filed a

11   lawsuit (unrelated to the instant lawsuit) against a financial planning firm in Hawaii.  *See Marks*

12   *v. Story* (Dist.  Hawaii Case No. 08-cv-00205).  In that lawsuit, Marks acknowledged that he

13   lacked the requisite expertise and sophistication to properly manage hedge funds or other

14   complex investment strategies.  Marks's admissions in the *Marks v. Story* lawsuit confirm that he

15   was incapable of fulfilling the fiduciary duties he owed to the Limited Partners.

16          79.     Furthermore, in an action recently filed in Colorado, it is admitted that the Sky

17   Bell Defendants failed to conduct due diligence with regard to at least three of the Sky Bell

18   Funds.  The action styled *Agile Sky Alliance Fund LP v. Citizens Financial Group d/b/a*

19   *CharterOne Bank* (D. Colo. Case No. 09-cv-02786-MSK-BNB), sought relief on behalf of three

20   Sky Bell funds from agents that had overseen investments made in the Petters scheme.  The

21   Complaint included Agile Sky, Select, and Offshore Partners among the plaintiffs.[2]  The

22   plaintiffs allege that their agents (*i.e.*, the fund-of-funds into which the Agile Sky Defendants

23   placed the Limited Partners' money) "simply were not doing or were recklessly performing"

24   their obligations, claiming that:

25

26
_____

27   [2]    Subsequently, counsel for Agile Sky and Offshore Partners voluntarily dismissed their claims
     because their presence as plaintiffs resulted in a lack of complete diversity among the litigants.
28   *Agile Sky Alliance Fund LP v. Citizens Financial Group d/b/a CharterOne Bank* (D. Colo. Case
     No. 09-cv-02786-MSK-BNB), Doc. No. 61.

1
2
3
4
5
6

> Had Defendants even scratched the surface of the diligence they committed to Agile to have already done and to continue to do over the course of Lancelot's operations -- for example, asking to see the inventory allegedly owned by Lancelot or calling Costco to see if it ever bought anything from Petters Entities (which it did not) -- the scheme would have come undone. Had Defendants performed the rigorous auditing work they claimed to perform, there would have been no massive Ponzi scheme, and no massive victim.

7   80.   This admission confirms that the Agile Sky Defendants **themselves** did little or no

8   due diligence regarding the agents to whom they abdicated their fiduciary obligations.  The Agile

9   Sky Defendants blindly relied on others to perform the due diligence and other fiduciary

10  obligations that they owed to the Limited Partners.  Indeed, had they "even scratched the surface

11  of the diligence" they committed to perform for the Limited Partners, they would have

12  recognized that their agents were making no due diligence efforts whatsoever.  The Agile Sky

13  Defendants were collecting management fees when, in reality, they did nothing more than

14  forward the investors' money to third parties.  Had the Agile Sky Defendants conducted due

15  diligence in the manner they claimed, they would have conducted office visits; background

16  checks; assessments regarding the quality and quantity of back office staff; and assessments of

17  the quality of the fund's administrator, auditor, attorney firm, prime broker, and methodology.  It

18  is now apparent that they failed to make even basic inquiries into the legitimacy of the

19  investments.

20  **E.   Role of the Auditor Defendants**

21  81.   The Auditor Defendants were, and in some cases continue to be, responsible for

22  providing accounting services and/or conducting audits of the Limited Partnerships' financial

23  statements.  Such services were provided at various times by:

24          (a)   Defendant Rothstein Kass for the Agile Sky Limited Partnership for the

25                year ended December 31, 2006, and potentially other years;

26          (b)   Defendant Rothstein Kass for the Night Watch Limited Partnership for the

27                years ended December 31, 2004 and December 31, 2006, and potentially

28                other years;

1           (c)     Defendant Rothstein Kass for the PipeLine Limited Partnership for the

2                 year ended December 31, 2006, and potentially other years;

3           (d)     Defendant E&Y for the Eden Rock Limited Partnership for the year ended

4                 December 31, 2005, December 31, 2006, and potentially December 31,

5                 2007, and potentially other years; and

6           (e)     Defendant McGladrey & Pullen for the Wailea Limited Partnership for the

7                 year ended December 31, 2007, and potentially other years.

8       82.     The Auditor Defendants knew that the General Partner Defendants owed fiduciary

9 duties to investors in the respective limited partnerships.  They failed to require that the General

10 Partner Defendants provide sufficient evidence that they had, in fact, conducted the necessary

11 due diligence regarding the limited partnerships' investments.  By turning a blind eye to the

12 deficiencies in the General Partner Defendants' conduct, the Auditor Defendants knowingly

13 provided substantial assistance to the General Partner Defendants' breaches of fiduciary duty.

14 The substantial assistance from the Auditor Defendants allowed the General Partner Defendants

15 to continue their misconduct.

16       83.     The Auditor Defendants had access to, and were required by professional

17 standards to know, the financial and business information for the respective limited partnerships.

18 In performing an audit, they were required to:

19           (a)     Exercise professional skepticism and an independence in attitude;

20           (b)     Exercise due professional case in performing the audit and preparing the

21                 audit report;

22           (c)     Obtain a sufficient understanding of the Limited Partnerships' internal

23                 controls;

24           (d)     Determine the nature, timing, and extent of tests to be performed based on

25                 the review of Limited Partnerships' internal controls;

26           (e)     Devise an audit plan that would appropriately address areas of audit risk;

27           (f)     Obtain sufficient evidence by inspection, observation, inquiries, and

28                 confirmations that a reasonable basis exists for their opinion regarding the

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1  financial statements, which includes seeking reliable information from

2  third parties; and

3  (g)  Plan, supervise, and perform the audit to obtain reasonable assurance as to

4  whether the financial statements are free of material misstatements.

5  84.  In performing their audits of the limited partnerships' respective financial

6  statements, the Auditor Defendants did not comply with the applicable auditing standards.  They

7  issued unqualified audit opinions, purportedly after conducting an audit in accordance with

8  Generally Accepted Auditing Standards ("GAAS").  However, any reasonable inquiry regarding

9  the nature of the investments made by the Limited Partnerships would have revealed

10 inconsistencies between the General Partner Defendants' duties to prudently manage the Limited

11 Partners' funds and what actually occurred.  In addition, it would have been evident that the

12 General Partner Defendants lacked sufficient evidence that they had conducted due diligence as

13 to the investments they made.

14 **CLASS ACTION ALLEGATIONS**

15 85.  Plaintiffs bring this action on behalf of a Class consisting of:

16 All persons or entities that own interests in the following Limited
   Partnerships in which Sky Bell Asset Management, LLC served as
17 a general partner: (a) Agile Sky Alliance Fund; (b) Eden Rock
   Finance Fund, L.P.; (c) Night Watch Partners, L.P.; (d) Pipeline
18 Investors, L.P.; (e) Sky Bell Offshore Partners, L.P.; (f) Sky Bell
   Select, L.P.; and (g) Wailea Partners, L.P.
19

20 86.  This action is also brought on behalf of the following Subclasses:

21 (a)  Agile Sky Subclass: all persons or entities who own

22 interests in Agile Sky Alliance Fund, L.P.;

23 (b)  Eden Rock Subclass: all persons or entities who own

24 interests in Eden Rock Finance Fund, L.P.;

25 (c)  Night Watch Subclass: all persons or entities who own

26 interests in Night Watch Partners L.P.;

27 (d)  PipeLine Subclass: all persons or entities who own interests

28 in Pipeline Investors, L.P.;

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1    (e)    Offshore Partners Subclass: all persons or entities who own

2           interests in Sky Bell Offshore Partners, Ltd.;

3    (f)    Select Subclass: all persons or entities who own interests in

4           Sky Bell Select L.P.; and

5    (g)    Wailea Subclass: all persons or entities who own interests

6           in Wailea Partners, L.P.

7    87.    Excluded from the Class and each of the Subclasses are the Defendants, the

8    officers, directors, and agents of the Defendants, as well as members of their families, heirs,

9    successors or assigns, and any entity in which Defendants have or had a controlling interest.

10   88.    The members of the Class and Subclasses are so numerous that joinder of all

11   members is impracticable.  While the exact number of Class and Subclass members is unknown

12   to the Plaintiffs at this time, and can only be ascertained through appropriate discovery, the

13   Plaintiff believe there are dozens of members in the proposed Class and Subclasses who are

14   geographically dispersed.  Members of the Class and Subclasses can be identified from records

15   maintained by Sky Bell.  Such Class and Subclass members can be notified of the pendency of

16   this action by mail, using a form of notice similar to that customarily used in class action

17   lawsuits.

18   89.    The Plaintiffs' claims are typical of those of the other Class and Subclass

19   members.  The Sky Bell Defendants and other General Partner Defendants owed fiduciary

20   obligations to the Plaintiffs, the Class members, and the Subclass members and breached those

21   duties.  Therefore, the Defendants' wrongful conduct affected Plaintiffs and all Class and

22   Subclass members similarly.

23   90.    Common questions of law and fact exist as to all Class and Subclass members.

24   Those common questions predominate over any questions affecting only individual Class and

25   Subclass members.  Common questions of law and fact include, but are not limited to, the

26   following:

27

28

       (a)     Whether the General Partner Defendants breached their fiduciary duties of due care and fair and honest dealing that they owed to the Class and Subclass members;

       (b)     Whether the General Partner Defendants breached their fiduciary duty of good faith and loyalty that they owed to the Class and Subclass members;

       (c)     Whether the General Partner Defendants breached their duty to perform adequate due diligence and investigation into the funds into which money from the Limited Partnerships was invested;

       (d)     Whether the General Partner Defendants breached their duty to manage the investments of the Limited Partners properly;

       (e)     Whether the General Partner Defendants breached their duty to execute transactions in accordance with the goals, investment objectives, permissible degree of risk, and instructions of the Limited Partnerships;

       (f)     Whether each of the Defendants is liable for aiding and abetting the aforementioned breaches of fiduciary duty; and

       (g)     Whether the Defendants, and each of them, were unjustly enriched as a result of the misconduct.

91.    The Plaintiffs will fairly and adequately protect the interests of the Class and Subclasses.  They have retained counsel who are experienced and competent in class action litigation.

92.    A class action is superior to other available methods to adjudicate this controversy because joiner of all Class and Subclass members is impracticable.  Furthermore, the expense and burden of individual litigation make it impossible for Class and Subclass members to individually redress the wrongs done to them.  There will be no difficulty in management of this action as a class action.

1

## CAUSES OF ACTION

2

### First Cause of Action:

3

### Breach of Fiduciary Duty

4

93.    This cause of action is brought as follows:

5

        (a)    By the Agile Sky Subclass against the Sky Bell Defendants, Agile Sky

6

                GP, and Agile Sky Limited Partnership;

7

        (b)    By the Eden Rock Subclass against the Sky Bell Defendants, Solid Rock,

8

                and Eden Rock Limited Partnership;

9

        (c)    By the Night Watch Subclass against the Sky Bell Defendants and Night

10

                Watch Limited Partnership;

11

        (d)    By the Offshore Partners Subclass against the Sky Bell Defendants and

12

                Offshore Partners Limited Partnership;

13

        (e)    By the PipeLine Subclass against the Sky Bell Defendants and PipeLine

14

                Limited Partnership;

15

        (f)    By the Select Subclass against the Sky Bell Defendants and Select Limited

16

                Partnership; and

17

        (g)    By the Wailea Subclass against the Sky Bell Defendants, Prospect Capital,

18

                and Wailea Limited Partnership.

19

94.    Plaintiffs incorporate by reference all preceding paragraphs.

20

95.    Defendant Sky Bell served as the General Partner or Co-General Partner in all

21

seven Limited Partnerships.  Limited Partnerships that had Co-General Partners included the

22

Agile Sky Limited Partnership (with Defendant Agile Sky GP); the Eden Rock Limited

23

Partnership (with Defendant Solid Rock); and the Wailea Limited Partnership (with Defendant

24

Prospect Capital).  These General Partner Defendants owed a fiduciary duty to the Class and

25

Subclass members in their respective Limited Partnerships.  The duties assumed by the General

26

Partners, and owed to the respective Class and Subclass members, included the duties to:

27

        (a)    Perform adequate due diligence and investigation into the funds in which

28

                money from the Limited Partnerships was invested;

1        (b)    Deal fairly and honestly with the Limited Partners;

2        (c)    Manage the investments of the Limited Partners properly;

3        (d)    Manage and operate the investments exclusively for the best interest of the

4        Limited Partners; and

5        (e)    Execute transactions in accordance with the goals, investment objectives,

6        permissible degree of risk, and instructions of the Limited Partners.

7    96.    The General Partner Defendants failed to fulfill the fiduciary duties owed to the

8    Class and Subclass members by, among other things:

9        (a)    Failing to properly conduct any due diligence and investigation of the

10        funds in which money was invested, including those affiliated with

11        Thomas Petters and/or Bernard Madoff, or finding and ignoring

12        indications of fraud demonstrating that the investments were not suitable

13        for the Limited Partnerships; and

14        (b)    Allowing themselves, the other Defendants, and their affiliates to profit at

15        the expense of the Limited Partners.

16    97.    A proximate causal connection exists between the Defendants' breaches of

17    fiduciary duty and the resulting injury to the Class and Subclass members.

18    98.    The Class and Subclass members suffered actual losses or damages as a result of

19    the breaches of fiduciary duty in which the General Partner Defendants engaged.

20    **Second Cause of Action:**

21    **Aiding and Abetting Breaches of Fiduciary Duty**

22    99.    This cause of action is brought as follows:

23        (a)    By all Class members against each of the Sky Bell Defendants;

24        (b)    By the Agile Sky Subclass against Agile Sky GP, Agile Sky Limited

25        Partnership, Agile Group, Greenberg & Associates, Greenberg, and

26        Rothstein Kass;

27

28

(c)     By the Eden Rock Subclass against Solid Rock, Eden Rock Limited Partnership, Eden Rock Capital Management, Volpe, Rothstein Kass, and E&Y;

(d)     By the Night Watch Subclass against the Night Watch Limited Partnership, and Rothstein Kass;

(e)     By the Offshore Partners Subclass against the Offshore Partners Limited Partnership, and Rothstein Kass;

(f)     By the PipeLine Subclass against the PipeLine Limited Partnership, and Rothstein Kass;

(g)     By the Select Subclass against the Select Limited Partnership, and Rothstein Kass; and

(h)     By the Wailea Subclass against Wailea Capital GP, Wailea Limited Partnership, Wailea Advisors, Prospect Capital, Belhumeur, and McGladrey & Pullen.

100.    Plaintiffs incorporate by reference all preceding paragraphs.

101.    As described above in the First Cause of Action for Breach of Fiduciary Duty, the General Partner Defendants assumed and owed duties to the Limited Partners. The General Partner Defendants failed to fulfill those duties.

102.    Each Defendant knowingly gave substantial assistance in such conduct, thus aiding and abetting the violations of the other Defendants. Without such substantial assistance and encouragement by the Defendants, the wrongful acts could not have occurred.

103.    Each Defendant had actual knowledge of the General Partner Defendants' breach of fiduciary duty or was willfully blind to the General Partner Defendants' breaches of fiduciary duty. Each Defendant knew that the General Partners in the respective Limited Partnerships owed a fiduciary duty to the Limited Partners. They were also aware that, to fulfill this duty, the General Partner Defendants were required to act with due care. Due care included, among other things, conducting adequate due diligence regarding the investments made by the Limited Partnerships and diversifying the investments among managers and asset classes. However, due

1   to their extensive responsibilities and involvement with the Limited Partnerships, each of the

2   Defendants knew or recklessly disregarded that adequate due diligence and investment

3   diversification did not occur.  Instead, they facilitated the activities of the General Partner

4   Defendants that were in violation of their fiduciary duties.  In doing so, each of the Defendants

5   aided and abetted the breaches committed by the General Partner Defendants.

6          104.    A proximate causal connection exists between the breaches of fiduciary duty and

7   the resulting injury to the Class and Subclass members.

8          105.    The Class and Subclass members suffered actual losses or damages as a result of

9   the breaches of fiduciary duty by the General Partner Defendants that were facilitated by the

10  other Defendants

11         106.    The Auditor Defendants also aided and abetted the General Partner Defendants'

12  breaches of fiduciary duty.  The Auditor Defendants had access to, and knowledge of, the

13  financial and business information for the respective Limited Partnerships.  In performing audits,

14  the Auditor Defendants were required to exercise professional skepticism and to devise an audit

15  plan that would appropriately address areas of audit risk.  The Auditor Defendants provided

16  substantial assistance to the General Partner Defendants' breaches of fiduciary duty by failing to

17  comply with the applicable auditing standards.  Any reasonable inquiry regarding the nature and

18  practices of the fund-of-funds in which the Limited Partnerships invested would have revealed

19  the General Partner Defendants' breaches of duty as alleged herein.  In addition, the Auditor

20  Defendants knew or recklessly disregarded that the General Partner Defendants lacked sufficient

21  evidence of the investments they made and the purported due diligence they claimed to have

22  conducted.  The Auditor Defendants knowingly provided substantial assistance to the General

23  Partner Defendants' breaches of fiduciary duty.

24                              **Third Cause of Action:**

25                                  **Negligence**

26         107.    This cause of action is brought as follows:

27                 (a)     By all Class and Subclass members against each of the Sky Bell

28                         Defendants;

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA                        – 24 –

      (b)     By the Agile Sky Subclass against each of the Agile Sky Defendants;

      (c)     By the Eden Rock Subclass against each of the Eden Rock Defendants and;

      (d)     By the Wailea Subclass against each of the Wailea Defendants.

108.    Plaintiff incorporates by reference all preceding paragraphs.

109.    The Defendants had a duty to use such skill, prudence, and diligence as other members of the investing profession commonly possess and exercise.

110.    The Defendants breached that duty by engaging in the actions, and failures to take action alleged above.  They breached their duty of care and failed to provide the Class and Subclass members with the services to which they were entitled.

111.    A proximate causal connection exists between the Defendants' negligent conduct and the resulting injury to the Class and Subclass members.

112.    The Class and Subclass members suffered actual losses or damages due to the Defendants' negligence.

113a.   In addition, the Auditor Defendants were negligent in conducting accounting and auditing services.  The Auditor Defendants were, and in some cases continue to be, responsible for providing accounting services and/or conducting audits of the Limited Partnerships' financial statements.  Such services were provided at various times by:

      (a)     Defendant Rothstein Kass for the Agile Sky Limited Partnership for the year ended December 31, 2006, and potentially other years;

      (b)     Defendant Rothstein Kass for the Night Watch Limited Partnership for the years ended December 31, 2004 and December 31, 2006, and potentially other years;

      (c)     Defendant Rothstein Kass for the PipeLine Limited Partnership for the year ended December 31, 2006, and potentially other years;

      (d)     Defendant E&Y for the Eden Rock Limited Partnership for the year ended December 31, 2005, December 31, 2006, potentially December 31, 2007, and potentially other years; and

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1        (e)      Defendant McGladrey & Pullen for the Wailea Limited Partnership for the

2                 year ended December 31, 2007, and potentially other years.

3        113b.   The Class and Subclass members were the intended third party beneficiaries of

4    the services provided by the Auditor Defendants.  Indeed, the engagement letters were **made**

5    **with the specific intent** that the audit reports were be distributed to the Limited Partners.  The

6    Limited Partnership Agreements and engagement letters demonstrate that the Limited Partners

7    were the practical and legal equivalent of clients of the Auditor Defendants; they were the

8    members of the class of persons and entities for whose benefit the engagement contracts were

9    created.  Each of the Limited Partnership Agreements provided that the Limited Partners (*i.e.*, the

10   members of the Class and Subclasses) would receive the partnership financial statements,

11   including the audit reports rendered by the Auditor Defendants.  The Class and Subclass

12   members were in fact sent, and received, the aforementioned financial statements and audit

13   reports.

14       113c.   Regarding the Agile Sky Limited Partnership, paragraph 7.1(b) of the Limited

15   Partnership Agreement provides that:

16               As soon as practicable after the end of the Fiscal Year, the General
                 Partner may, in its sole discretion, cause an audit of the financial
17               statements of the Partnership as of the end of the Fiscal Year to be
                 made by a firm of certified public accountants selected by the
18               General Partner and as soon as is practicable thereafter, **a copy set**
19               **of financial statements** prepared on a basis that used generally
                 accepted accounting principles as a general guideline, **including**
20               **the report of such certified public accountants, shall be**
                 **furnished to each Partner.**  (Emphasis added.)
21

22   The engagement letter for Rothstein Kass' audit of the Agile Sky Limited Partnership states,

23   among other things, that:

24            •   "We will audit the Fund's statement of financial condition and
                 condensed schedule of investments . . . and the related statements
25               of operations, **changes in partners' capital and cash flows** (id
                 applicable, for the year then ended.
26

27            •   "You are responsible for making **all financial records and related**
                 **information** available to us . . ."
28

---

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

- "If reproduction or publication of the financial statements is intended, we do not grant permission for the use of our name in such publications **until we review the masters or printer's proof of the [audit] report and the accompanying text**."

- "An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested.  Also, we will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (a) errors, (b) fraudulent financial reporting, (c) misappropriation of assets, or violations of laws or governmental regulations that are attributable to the Fund or to acts of management or employees acting on behalf of the Fund.

- "Our audit will include obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing, and extent of audit procedures to be performed."

- Rothstein Kass will prepare the Agile Sky Limited Partnership tax returns, "**including Schedules K-1.**"  (Emphasis added throughout.)

Reading paragraph 7.1(b) of the Limited Partnership Agreements along with the engagement letters, it is clear that Rothstein Kass knew any audit reports it prepared on the financial statements of the Agile Sky Limited Partnership would be distributed to the Limited Partners.  In addition, Rothstein Kass' requirement in its engagement agreements that it approve in advance the audit reports and accompanying text which were reproduced to the Limited Partners demonstrates that it knew of – and approved – dissemination to and reliance by the Limited Partners on its professional services.  There is no indication that Rothstein Kass ever objected to the dissemination of its audit reports or related documents to the Limited Partners.  Thus, Limited Partners were thereby intended third party beneficiaries of the audit engagement agreements.  Furthermore, the Schedule K-1s were documents specifically and directly intended for the use of Limited Partners in reporting and filing their personal tax returns and which were derived directly from the results reflected in the partnerships financial statements audited and

1    opined on by Rothstein Kass.  Preparation of the Schedule K-1s was a direct service that

2    Rothstein Kass provided to the Limited Partners.

3            113d.   Regarding the Night Watch Limited Partnership, paragraph 7.1(b) of the Limited

4    Partnership Agreement provides that:

5                   As soon as practicable after the end of the Fiscal Year, the General
                    Partner may, in its sole discretion, cause an audit of the financial
6                   statements of the Partnership as of the end of the Fiscal Year to be
                    made by a firm of certified public accountants selected by the
7                   General Partner and as soon as is practicable thereafter, **a copy set
8                   of financial statements** prepared on a basis that used generally
                    accepted accounting principles as a general guideline, **including
9                   the report of such certified public accountants, shall be
                    furnished to each Partner.**  (Emphasis added.)
10

11   The engagement letters for Rothstein Kass' audit of the Night Watch Limited Partnership states,

12   among other things, that:

13          •   "We will audit the Fund's statement of financial condition and
                condensed schedule of investments . . . and the related
14              statements of operations, **changes in partners' capital and
                cash flows** (id applicable, for the year then ended.
15

16          •   "You are responsible for making **all financial records and
                related information** available to us . . ."
17

18          •   "If reproduction or publication of the financial statements is
                intended, we do not grant permission for the use of our name in
19              such publications **until we review the masters or printer's
                proof of the [audit] report and the accompanying text**."
20              Rothstein Kass never objected to dissemination of its audit
21              reports to the Limited Partners."

22          •   "An audit includes examining, on a test basis, evidence
                supporting the amounts and disclosures in the financial
23              statements; therefore, our audit will involve judgment about the
                number of transactions to be examined and the areas to be
24              tested.  Also, we will plan and perform the audit to obtain
25              reasonable assurance about whether the financial statements
                are free of material misstatement, whether from (a) errors, (b)
26              fraudulent financial reporting, (c) misappropriation of assets, or
                violations of laws or governmental regulations that are
27              attributable to the Fund or to acts of management or employees
28              acting on behalf of the Fund."

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1

2        •   "Our audit will include obtaining an understanding of internal
3                control sufficient to plan the audit and to determine the nature,
            timing, and extent of audit procedures to be performed."
4                (Emphasis added throughout.)

5    Reading paragraph 7.1(b) of the Limited Partnership Agreements along with the engagement

6    letters, it is clear that Rothstein Kass knew any audit reports it prepared on the financial

7    statements of the Night Watch Limited Partnership would be distributed to the Limited Partners.

8    In addition, Rothstein Kass' requirement in the engagement agreements that it approve in

9    advance the audit reports and accompanying text which were distributed to the Limited Partners

10   demonstrates that it knew of – and approved – dissemination to and reliance by the Limited

11   Partners on its professional services and the Limited Partners were thereby intended third party

12   beneficiaries of the audit engagement agreements.  There is no indication that Rothstein Kass

13   ever objected to the audit reports and related documents being distributed to the Limited

14   Partners.

15         113e.   Regarding the PipeLine Limited Partnership, paragraph 7.1(b) of the Limited

16   Partnership Agreement provides that:

17              As soon as practicable after the end of the Fiscal Year, the
           General Partner may, in its sole discretion, cause an audit of the
18              financial statements of the Partnership as of the end of the Fiscal
           Year to be made by a firm of certified public accountants selected
19              by the General Partner and as soon as is practicable thereafter, **a**
20              **copy set of financial statements** prepared on a basis that used
           generally accepted accounting principles as a general guideline,
21              **including the report of such certified public accountants, shall**
22              **be furnished to each Partner.**  (Emphasis added.)

23   The engagement letter for Rothstein Kass' audit of the PipeLine Limited Partnership states,

24   among other things, that:

25       •   "We will audit the Fund's statement of financial condition and
            condensed schedule of investments . . . and the related
26               statements of operations, **changes in partners' capital and**
27               **cash flows** (id applicable, for the year then ended.

28

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

- "You are responsible for making **all financial records and related information** available to us . . ."

- "If reproduction or publication of the financial statements is intended, we do not grant permission for the use of our name in such publications **until we review the masters or printer's proof of the [audit] report and the accompanying text**." Rothstein Kass never objected to dissemination of its audit reports to the Limited Partners.

- "An audit includes examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements; therefore, our audit will involve judgment about the number of transactions to be examined and the areas to be tested. Also, we will plan and perform the audit to obtain reasonable assurance about whether the financial statements are free of material misstatement, whether from (a) errors, (b) fraudulent financial reporting, (c) misappropriation of assets, or violations of laws or governmental regulations that are attributable to the Fund or to acts of management or employees acting on behalf of the Fund."

- "Our audit will include obtaining an understanding of internal control sufficient to plan the audit and to determine the nature, timing, and extent of audit procedures to be performed."

- For at least one of the years at issue, Rothstein Kass was to prepare the PipeLine Limited Partnership tax returns, "**including Schedules K-1.**" (Emphasis added throughout.)

Reading paragraph 7.1(b) of the Limited Partnership Agreements along with the engagement letters, it is clear that Rothstein Kass knew any audit reports it prepared on the financial statements of the PipeLine Limited Partnership would be distributed to the Limited Partners. In addition, Rothstein Kass' requirement in its engagement agreements that it approve in advance the audit reports and accompanying text which were reproduced to the Limited Partners demonstrates that it knew of – and approved – dissemination to and reliance by the Limited Partners on its professional services and the Limited Partners were thereby intended third party beneficiaries of the audit engagement agreements. Rothstein Kass never objected to the distribution of its audit reports and related materials to the Limited Partners. Furthermore, the

1    Schedule K-1s were documents specifically and directly intended for the use of Limited Partners

2    in reporting and filing their personal tax returns and which were derived directly from the results

3    reflected in the partnerships financial statements audited and opined on by Rothstein Kass.

4    Preparation of the Schedule K-1s was a direct service that Rothstein Kass provided to the

5    Limited Partners.

6         113f.   Regarding Eden Rock Limited Partnership, paragraph 7.1(b) of the Limited

7    Partnership Agreement provides that:

8              As soon as practicable after the end of the Fiscal Year, the General
             Partner may, in its sole discretion, cause an audit of the financial
9              statements of the Partnership as of the end of the Fiscal Year to be
             made by a firm of certified public accountants selected by the
10             General Partner and as soon as is practicable thereafter, **a copy set
             of financial statements** prepared on a basis that used generally
11             accepted accounting principles as a general guideline, **including
             the report of such certified public accountants, shall be
12             furnished to each Partner.**  (Emphasis added.)

13

14    Defendant E&Y was the auditor for the Eden Rock Limited Partnership.  E&Y's July 2005

15    engagement letter unequivocally shows that the Limited Partners were the practical and legal

16    equivalent of clients to the Auditor Defendants.  The engagement letter states that "[o]ur report

17    will be made **solely to the partnership's members, as a body**" and that E&Y bears no

18    responsibility "to anyone other than the partnership and **the partnership's members, as a

19    body**."  (Emphasis added.)  The "members" are the Limited Partners.  Similarly, E&Y's July

20    2007 engagement letter states that "[a]s auditors of the partnership our objective . . . is to

21    **examine the accounts presented by the general partners, and then report to the partners**."

22    (Emphasis added.)  Reading paragraph 7.1(b) of the Limited Partnership Agreements along with

23    the engagement letters, it is clear that E&Y knew any audit reports it prepared on the financial

24    statements of the Eden Rock Limited Partnership would be distributed to the Limited Partners.

25         113g.   Regarding the Wailea Limited Partnership, paragraph 7.1(b) of the Limited

26    Partnership Agreement provides that:

27              As soon as practicable after the end of each Fiscal Year, the
             General Partner causes an audit of the financial statements of the
28             Partnership as of the end of each such Fiscal Year to be made by a

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

firm of certified public accountants selected by the General Partner
in its sole discretion; as soon as is practicable thereafter, but
subject to Section 7.5, a copy of a set of financial statements
prepared on a basis that uses generally accepted accounting
principles as a guideline (with such adjustments thereto as the
General Partner determines appropriate in its sole discretion),
including the report of such certified public accountants, is
furnished to each Partner.

Defendant McGladrey was auditor for the Wailea Limited Partnership.  It seems, by all

appearances, that multiple engagement letters and supplements thereto may exist.  However, one

such letter states that:

Professional standards and our firm policies require that we
perform certain additional procedures whenever our reports are
included, or we are named as accountants, auditors, or "experts" in
a document used in a public or private offering of equity or debt
securities. Accordingly, the Fund agrees that it will not include our
reports, or otherwise make reference to us, in any public or private
securities offering without first obtaining our consent.  **Any
request to consent is also a matter for which separate
arrangements will be necessary.  After obtaining our consent,
the Fund agrees to provide us with printer's proofs or masters
of such offering documents for our review before it is
distributed. . . .**  (Emphasis added.)

It appears that "separate arrangements" did exist because the Limited Partnership Agreement

provides in paragraph 7.1(b) that the Limited Partners would be provided with any audit reports

prepared by McGladrey.  Reading paragraph 7.1(b) of the Limited Partnership Agreements along

with the engagement letter identified above, it is clear that McGladrey knew about, and did not

object to, the audit reports prepared on the financial statements of the Eden Rock Limited

Partnership being distributed to the Limited Partners.

113h.   Regarding the Select Limited Partnership, paragraph 7.1(b) of the Limited

Partnership Agreement provides that:

As soon as practicable after the end of the Fiscal Year, the General
Partner may, in its sole discretion, cause an audit of the financial
statements of the Partnership as of the end of the Fiscal Year to be
made by a firm of certified public accountants selected by the
General Partner and as soon as is practicable thereafter, **a copy set**

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

1
2
3

> **of financial statements** prepared on a basis that used generally accepted accounting principles as a general guideline, **including the report of such certified public accountants, shall be furnished to each Partner.** (Emphasis added.)

4   Plaintiffs allege, on information and belief, that any engagement letters between the Select

5   Limited Partnership and any Auditor Defendant would contain language similar to that in the

6   other engagement letters. It is further alleged that any engagement letters were **made with the**

7   **specific intent** that the audit reports were be distributed to the Limited Partners, pursuant to

8   paragraph 7.1(b) of the Limited Partnership Agreement. The auditing firm would, in the

9   ordinary course of the audit, read and even copy the Limited Partnership Agreement into its

10  workpapers and, therefore, would know that the Limited Partners were to receive the report.

11  Because the engagement agreement would have been made with this distribution in mind,

12  Plaintiffs allege that the Limited Partners were the intended third party beneficiaries of any

13  engagement agreement or, at a minimum, would be entitled to discovery regarding the terms of

14  any such engagement agreement.

15       113i.    Regarding the Offshore Partners Limited Partnership, paragraph 7.1(b) of the

16  Limited Partnership Agreement provides that:

17
18
19
20
21
22

> As soon as practicable after the end of the Fiscal Year, the General Partner may, in its sole discretion, cause an audit of the financial statements of the Partnership as of the end of the Fiscal Year to be made by a firm of certified public accountants selected by the General Partner and as soon as is practicable thereafter, **a copy set of financial statements** prepared on a basis that used generally accepted accounting principles as a general guideline, **including the report of such certified public accountants, shall be furnished to each Partner.** (Emphasis added.)

23  Plaintiffs allege, on information and belief, that any engagement letters between the Select

24  Limited Partnership and any Auditor Defendant would contain language similar to that in the

25  other engagement letters. It is further alleged that any engagement letters were **made with the**

26  **specific intent** that the audit reports were be distributed to the Limited Partners, pursuant to

27  paragraph 7.1(b) of the Limited Partnership Agreement. The auditing firm would, in the

28  ordinary course of the audit, read and even copy the Limited Partnership Agreement into its

1    workpapers and, therefore, would know that the Limited Partners were to receive the report.

2    Because the engagement agreement would have been made with this distribution in mind,

3    Plaintiffs allege that the Limited Partners were the intended third party beneficiaries of any

4    engagement agreement or, at a minimum, would be entitled to discovery regarding the terms of

5    any such engagement agreement.

6        113j.  The Class and the Subclass members were in fact sent, and received, the

7    aforementioned financial statements and audit reports.  The Limited Partnership agreements

8    indicated that the Limited Partners would receive copies of any Audit Reports prepared

9    regarding the Limited Partnerships.  The engagement agreements were made with distribution to

10   the limited partners in mind.  This intended distribution is supported not only by the language of

11   the engagement letters, but also by the nature of the partnerships themselves, *i.e.,* limited

12   partnerships, in which the Limited Partners provide the capital to be invested by the partnerships,

13   the auditor is identified in the offering memoranda by name, obviously with its consent, the

14   partnership agreements explicitly acknowledge dissemination will occur, and the auditors have

15   this document as part of their work papers.  In the course of an audit, an auditing firm would

16   know that the Limited Partners are to receive the audit report.  Because the engagement

17   agreements were made with this distribution in mind, Plaintiffs alleged that the Limited Partners

18   were third party beneficiaries of the engagement agreements.  The engagement letters reflect an

19   understanding and agreement that the audit reports would be sent to the Limited Partners.  The

20   Auditors Defendants understood and agreed that their audit reports would be sent to the Limited

21   Partners.  Accordingly, the Limited Partners were the practical and legal equivalent of clients to

22   the Auditor Defendants.

23       113k.  As demonstrated by the language of the engagement letters identified above, the

24   Auditor Defendants had access to, and were required by professional standards to know, the

25   financial and business information for the respective limited partnerships.  In performing an

26   audit, they were required to:

27

28

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA        – 34 –

1     (a)    Exercise professional skepticism and an independence in attitude;

2     (b)    Exercise due professional care in performing the audit and preparing the

3     audit report;

4     (c)    Obtain a sufficient understanding of the Limited Partnerships' internal

5     controls;

6     (d)    Determine the nature, timing, and extent of tests to be performed based on

7     the review of the Limited Partnerships' internal controls;

8     (e)    Devise an audit plan that would appropriately address areas of audit risk;

9     (f)    Obtain sufficient evidence by inspection, observation, inquiries, and

10     confirmations that a reasonable basis exists for their opinion regarding the

11     financial statements, which includes seeking reliable information from

12     third parties; and

13     (g)    Plan, supervise, and perform the audit to obtain reasonable assurance as to

14     whether the financial statements are free of material misstatements.

15     113l.  The Auditor Defendants would have, as a matter of course, read and copied the

16 Limited Partnership Agreements into their audit workpapers.  Accordingly, the Auditor

17 Defendants knew the Limited Partners were intended to receive and review the audit reports.  In

18 addition, the engagement letters states that the Limited Partnerships would make no publication

19 or dissemination of the reports without the Auditor Defendants' prior consent and approval of the

20 language.  The Auditor Defendants have not claimed that the audit reports were distributed to the

21 Limited Partners without their consent.  The absence of any such dispute further indicates that

22 the Auditor Defendants knew of, and did not object to, the audit reports' dissemination to the

23 Limited Partners.  Furthermore, certain of the engagement letters provide that K-1s based on the

24 financial statements would be prepared by the auditor, which were obviously intended for

25 dissemination to the Limited Partners for purposes of their individual tax returns.  The

26 engagement agreements between the Auditor Defendants and the Limited Partnerships were

27 made with this distribution in mind, thereby making the Limited partners intended third-party

28 beneficiaries of the engagement agreements.

113m.  The Auditor Defendants breached their duties of care and professional competence by, among other things, failing to render services in accordance with professional standards of care, including GAAS, and failing to exercise professional skepticism.  The Auditor Defendants could not have found adequate evidence of due diligence conducted by the Sky Bell Defendants, Agile Sky Defendants, Eden Rock Defendants, and the Wailea Defendants.  The Sky Bell Defendants, Agile Sky Defendants, Eden Rock Defendants, and the Wailea Defendants knew that many of the fund-of-funds in which they placed the Class and Subclass members' money would have revealed, at a minimum, red flags indicating that the fund-of-funds in which the Sky Bell Defendants, Agile Sky Defendants, Eden Rock Defendants, and the Wailea Defendants placed the Limited Partnerships' money followed an inappropriate investment strategy.

## Fourth Cause of Action:

## Unjust Enrichment

114.    This cause of action is brought as follows:

(a)     By all Class and Subclass members against each of the Sky Bell Defendants;

(b)     By the Agile Sky Alliance Subclass against each of the Agile Sky Defendants;

(c)     By the Eden Rock Subclass against each of the Eden Rock Defendants; and

(d)     By the Wailea Subclass against each of the Wailea Defendants;

115.    Plaintiffs incorporate by reference all preceding paragraphs.

116.    By their wrongful acts and omissions, the Defendants were unjustly enriched at the expense and to the detriment of the Plaintiffs.  At a minimum, the unjust enrichment to the Defendants includes the management fees they received, although it is believed the unjust enrichment exceeds these amounts.

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

117.    In addition, the Auditor Defendants collected substantial fees that were paid from the Limited Partnerships' assets for their services even though those services failed to comply with GAAS.

118.    Under principles of equity and good conscience, Defendants should be required to pay back to the Limited Partners the amount of the unjust enrichment.  To this day, the Defendants still continue to collect management fees from the Limited Partnerships.  They are doing so despite the Limited Partners' repeatedly expressed desire to have their money returned to them.  The Defendants claim that it is impossible to do so because several of the fund-of-funds in which the money was placed are illiquid.  For the Defendants to continue collecting management fees under these circumstances is unconscionable.  In addition, given their utter failure to perform their fiduciary obligations, all past management and performance fees collected by the Defendants should be disgorged as well.  Accordingly, the Limited Partners request an Order of this Court requiring that the Defendants disgorge and pay as restitution all profits, benefits, and other compensation they obtained from their wrongful conduct and fiduciary breaches.

**Fifth Cause of Action:**

**For an Accounting**

119.    This cause of action is brought as follows:

(a)    By all Class and Subclass members against the Sky Bell Defendants;

(b)    By the Agile Sky Alliance Subclass against the Agile Sky Defendants;

(c)    By the Eden Rock Subclass against the Eden Rock Defendants; and

(d)    By the Wailea Subclass against the Wailea Defendants.

120.    Plaintiffs incorporate by reference all preceding paragraphs.

121.    The Defendants had a duty to document and keep records of: (a) the investments and transactions made on behalf of the Limited Partners; and (b) the management, performance, and professional fees, commissions, and other compensation they collected.

122.    As set forth above, the Defendants were unjustly enriched by their misconduct, thereby entitling the Limited Partners to the imposition of a constructive trust that cannot be implemented without a thorough and comprehensive accounting.

123.    The amount of money due from the Defendants to the Limited Partners is unknown to the Limited Partners and cannot be ascertained without an accounting of: (a) the actual investments and transactions made on the Limited Partners' behalf; (b) the actual calculations used to determine all management, performance, and other such fees and compensation; and (c) the amounts taken by the Defendants as management and performance fees, commissions, and other compensation in connection with the Limited Partnerships.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs, individually and on behalf of all others similarly situated, pray for relief and judgment as follows:

A.      Awarding compensatory damages in favor of Plaintiffs and the Class and Subclass members against all Defendants, jointly and severally, for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be determined at trial, including interest thereon;

B.      Awarding disgorgement and restitution in favor of the Plaintiffs and the Class and Subclass members against all Defendants for earnings, profits, compensation and benefits received by the Defendants as a result of their unlawful acts and practices;

C.      Awarding Plaintiffs and the Class and Subclass members reasonable costs and expenses incurred in this action, including attorneys' fees;

D.      For an accounting of all transactions made in the funds as well as their current balances;

E.      For removal of Defendant Sky Bell as general partner in each of the Limited Partnerships; removal of Defendant Agile Sky GP as co-general partner of the Agile Sky Alliance limited partnership; removal of Defendant Solid Rock as co-general partner of the Eden Rock limited partnership; and removal of Prospect Capital as a co-general partner of the Wailea limited partnership; and

1      F.      Awarding such other and further relief as the Court may deem proper and just.

2                              **<u>JURY DEMAND</u>**

3      Plaintiffs hereby demand a trial by jury.

4  Dated:  June 13, 2011              Respectfully submitted,
                                      GOLD BENNETT CERA & SIDENER LLP
5

6                                      _____/s/Gwendolyn R. Giblin_____
                                          Gwendolyn R. Giblin
7                                      Solomon B. Cera
                                       C. Andrew Dirksen
8                                      595 Market Street, Suite 2300
                                       San Francisco, CA 94105
9                                      Telephone: (415) 777-2230
                                       Facsimile: (415) 777-5189
10

11                                     Counsel for Plaintiffs on behalf of themselves and
                                       all others similarly situated
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THIRD AMENDED CLASS ACTION COMPLAINT - Case No. CGC-10-CV-03588 WHA

**APPENDIX A**

| Defendant Group: | Includes the Following Defendants: |
|---|---|
| Sky Bell Defendants | Sky Bell<br>Marks<br>Gotsch<br>Sell |
| Agile Sky Defendants | Agile Sky Limited Partnership<br>Agile Sky GP<br>Agile Group<br>Greenberg & Associates<br>Greenberg<br>Rothstein Kass<br>Sky Bell<br>Marks<br>Gotsch<br>Sell |
| Eden Rock Defendants | Eden Rock Limited Partnership<br>Solid Rock<br>Eden Rock Capital Management<br>Volpe<br>E&Y<br>Sky Bell<br>Marks<br>Gotsch<br>Sell |
| Night Watch Defendants | Night Watch Limited Partnership<br>Sky Bell<br>Marks<br>Gotsch<br>Sell<br>Rothstein Kass |
| Offshore Partners | Offshore Partners Limited Partnership<br>Sky Bell<br>Marks<br>Gotsch<br>Sell |
| PipeLine Defendants | Pipeline Investors Limited Partnership<br>Sky Bell<br>Marks<br>Gotsch<br>Sell<br>Rothstein Kass |

| Select Defendants | Select Limited Partnership<br>Sky Bell<br>Marks<br>Gotsch<br>Sell |
|---|---|
| Wailea Defendants | Wailea Limited Partnership<br>Wailea Capital GP<br>Wailea Advisors<br>Prospect Capital<br>Belhumeur<br>McGladrey & Pullen<br>Sky Bell<br>Marks<br>Gotsch<br>Sell |
| General Partner Defendants | Sky Bell<br>Agile Sky GP<br>Solid Rock<br>Prospect Capital |
| Auditor Defendants | Rothstein Kass<br>E&Y<br>McGladrey & Pullen |