**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EDGAR W. TUTTLE, ERIC BRAUN, THE
BRAUN FAMILY TRUST, and WENDY
MEG SIEGEL, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

  v.

SKY BELL ASSET MANAGEMENT, LLC,
*et al.*,

    Defendants.

No. C 10-03588 WHA

**ORDER REGARDING ERNST & YOUNG LLC'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND PROPER SERVICE**

**INTRODUCTION**

A prior order held in abeyance a motion to dismiss for lack of personal jurisdiction and failure to effect proper service. After supplemental discovery, and to the extent stated below, the motion is **GRANTED**.

**STATEMENT**

A prior order held in abeyance a motion to dismiss by defendant Ernst & Young LLC and set a deadline of August 11 for both sides to conduct jurisdictional discovery and to file supplemental submissions (Dkt. No. 154). The submissions included memoranda and supporting evidence from both sides (Dkt. Nos. 182; 186–88; 191) and a request from Ernst & Young LLC to strike plaintiffs' memorandum (Dkt. Nos. 199; 222; 239).

The prior order also granted leave to conduct jurisdictional discovery into whether defendant Ernst & Young LLC, which is an Isle of Man entity, is subject to jurisdiction in California in this matter. Defendant Ernst & Young LLC served as an auditor for the Eden Rock Fund, LP ("Eden Rock Limited Partnership"), a Delaware limited partnership and also a defendant in this action (Third Amd. Compl. ¶ 23). Named plaintiff Edgar W. Tuttle, who holds a limited partnership interest in the Eden Rock Limited Partnership, alleges that "E&Y" was negligent in its audit of the Eden Rock Limited Partnership and that "E&Y . . . fail[ed] to comply with the applicable auditing standards" in its audit of Eden Rock Limited Partnership, thereby aiding and abetting the general partner defendants' breaches of fiduciary duty (*id.* ¶¶ 7, 99(b), 106, 113a). The jurisdictional discovery period has now ended, and Ernst & Young's motion to dismiss is ripe for decision. A submission by plaintiffs had miscitations and a follow-up inquiry by the judge eventually clarified points of confusion in the record.

**ANALYSIS**

Ernst & Young LLC is an Isle of Man entity. Based on the record presented, it has no relationship to Ernst & Young *LLP*, an English LLP, except that both are members of Ernst & Young Global Limited, which is a global organization of member firms practicing under the Ernst & Young brand, but which are all separate legal entities (Dkt. No. 138).

1. **PERSONAL JURISDICTION.**

Personal jurisdiction may be either general or specific to the allegations in the complaint. "[P]laintiff bears the burden of demonstrating that jurisdiction is appropriate . . . [and] the plaintiff need only make a prima facie showing of jurisdictional facts." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citation omitted).

A. **General Jurisdiction.**

Plaintiffs' third amended complaint (the operative complaint) fails to allege continuous and systematic contact between Ernst & Young LLC and California. For general jurisdiction to exist over a nonresident defendant, "the defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state." *Id.* at 801 (citations and quotation marks omitted).

2

The third amended complaint alleges that "Defendant Ernst & Young LLC . . . served as an auditor for the Eden Rock Limited Partnership," that "Defendant Eden Rock Finance Fund, L.P. ('Eden Rock Limited Partnership') is a Delaware limited partnership," and that Ernst & Young aided and abetted breaches of fiduciary duty and was negligent when it audited the Eden Rock Limited Partnership (Third Amd. Compl. ¶¶ 23, 27, 48, 106, 113a).

Plaintiffs do not invoke general jurisdiction as to Ernst & Young LLC, the entity at issue. Specific personal jurisdiction is claimed. They also argue that the corporate veil with other Ernst & Young entities should be pierced to subject Ernst & Young LLC to general jurisdiction.

### B. Specific Jurisdiction.

Specific jurisdiction lies only where a defendant "has sufficient 'minimum contacts' with the [forum state] arising from, or related to, its actions" at issue in the case, including the following:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 801–02 (citation omitted). Plaintiffs bear the burden of satisfying the first two prongs of the test, and if they do, defendant must "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.* at 802 (citations omitted). "[J]urisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990).

The engagement letter of 2007 between Ernst & Young LLC and Eden Rock Finance Fund LP contained a change in language from the engagement letter of 2005, regarding who Ernst & Young LLC makes its audit "report to," which is of significance to our specific jurisdiction inquiry. As part of supplemental briefing, plaintiffs' counsel submitted audit reports and financial statements of Eden Rock Finance Fund for the "year ended 31 December 2006"

3

and the "year ended 31 December 2007," which were prepared by Ernst & Young LLC, and are also of significance to our personal jurisdiction inquiry (Dkt. Nos. 188-1; 191-1).

Thus, the order first considers whether specific jurisdiction exists over Ernst & Young LLC for the period *prior* to 2006. Then, the order considers whether specific jurisdiction exists for the period *after* 2005.

### (1) Period *Prior* to 2006.

In response to an order dated June 16, 2011, holding in abeyance a motion to dismiss by Ernst & Young LLC, plaintiff filed a submission and provided the *engagement letter* between Ernst & Young LLC and Eden Rock Finance Fund LP dated July 1, 2005 (Dkt. Nos. 154; 187-4). The Court, however, has been unable to locate any *audit report* for 2005 and therefore unable to determine to whom any such audit report is addressed. Thus, no decision will be made as to whether personal jurisdiction exists over Ernst & Young LLC for the period prior to 2006.

### (2) Period *After* 2005.

Several exhibits relevant to the specific jurisdiction inquiry were submitted through supplemental briefing. The engagement letter for 2007 between Ernst & Young LLC and Eden Rock Finance Fund LP specifically directed Ernst & Young LLC to "report to the partners" (Dkt. No. 133-1 at 15). The enclosed terms appended to the engagement letter further stated that Ernst & Young LLC would "report to the partnership's partners as to whether, in [their] opinion the accounts have been properly prepared in accordance with generally accepted accounting principles in the United States of America" (Dkt. No. 133-1 at 23).

Plaintiffs also submitted: (1) the audit report and financial statement of Eden Rock Finance Fund LP prepared by Ernst & Young LLC for the year ending in December 31, 2006, which was "*forwarded to* [the attention of plaintiff Eric Braun] in California [by his parents, who are residents of New York and are limited partners in the Eden Rock fund]" and (2) the audit report and financial statement of Eden Rock prepared by Ernst & Young LLC for the year ending in December 31, 2007, which was "received [by declarant James Sciaroni] . . . while resident in the State of California" (Dkt. Nos. 188; 191). Declarant Sciaroni, a limited partner in the Eden Rock Finance Fund LP, states: "I am aware that there are several other limited partners

4

of Eden Rock who reside in California who were similarly sent the Eden Rock financial statements . . . as to which Ernst & Young provided an audit opinion" (Dkt. No. 191). Based on this evidence, plaintiffs argue that specific jurisdiction should exist over Ernst & Young LLC because "E&Y knew its work product would be delivered to and relied on by the limited partners of the partnership, some of whom reside in California" (Dkt. No. 186 at 8). Defendants contend this is an insufficient basis upon which to establish personal jurisdiction over Ernst & Young LLC (Dkt. No. 239 at 3).

This order concludes that plaintiffs have made a prima facie showing as to the period after 2005 to carry their burden that Ernst & Young LLC "purposefully direct[ed] [it]s activities or consummate[d] some transaction with the forum or resident thereof; or perform[ed] some act by which [it] purposefully avail[ed] [it]self of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." *Schwarzenegger*, 374 F.3d at 802. The complaint's allegations and the evidence presented after jurisdictional discovery show that Ernst & Young LLC audit reports were *received by* one or some limited partners in the Eden Rock fund in California. The language in the engagement letters and enclosed terms, as noted above, and the language in the audit reports themselves provides further support. Both the 2006 and 2007 audit reports were addressed "to the members of Eden Rock Finance Fund LP" and stated "[t]his report is made solely to the partners, as a body" (Dkt. Nos. 188-1 at 5; 191-1 at 5). In other words, Ernst & Young LLC undertook to make a direct report and representations to each and every partner, without regard to their locations, and it would have been entirely foreseeable that at least some of those partners might reside in California. Whether or not the auditor physically mailed the reports does not now matter. What matters now is that the auditor undertook to express an audit opinion in direct privity with each and every partner in the partnership at issue. Thus, personal jurisdiction in California exists over Ernst & Young LLC for the period after 2005, given that at least some partners foreseeably resided in California.

**2. IMPROPER SERVICE.**

Regardless of personal jurisdiction, however, a plaintiff must effect proper service of the summons and complaint in order to bring defendant into the jurisdiction of this Court. This is

5

1 governed by Federal Rule of Civil Procedure 4. Plaintiffs bear the burden of establishing that
2 service was valid under Rule 4. "A federal court does not have jurisdiction over a defendant
3 unless the defendant has been served properly under Rule 4." *Direct Mail Specialists, Inc. v.*
4 *Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Our court of appeals has
5 held that "neither actual notice nor simply naming the defendant in the complaint will provide
6 personal jurisdiction without *substantial* compliance with Rule 4." *Sec. & Exch. Comm'n v.*
7 *Ross*, 504 F.3d 1130, 1140 (9th Cir. 2007) (emphasis added).

8 Ernst & Young LLC argues that the Isle of Man entity is the only operative entity for
9 purpose of this action and that plaintiffs never served that entity, though they *may* have served
10 other Ernst & Young Global entities. In an order dated June 6, 2011, this Court concluded that
11 (Dkt. No. 154):

> Although the correspondence put in by the Giblin Declaration does not necessarily show that service was effectuated through non-Isle of Man E&Y entities, it does raise concerns about whether the Isle of Man entity was really the only part of Ernst & Young Global involved here . . . [And] whether service was proper depends in part on how the claims in this matter circumscribe the various Ernst & Young entities.

16 Even after being provided a second opportunity to prove service was proper under Rule 4, as is
17 plaintiffs' burden, plaintiffs have still not put forward evidence to create a record upon which
18 this Court can make a determination about whether plaintiffs have met their burden. Plaintiffs
19 addressed the service issue in their supplemental briefing but offered no further evidence to
20 support their arguments, which are themselves mere restatements of the same arguments made
21 in their earlier briefing (Dkt. No. 186).

22 At the case management conference on December 2, 2010, almost a year ago, "it
23 appeared plaintiff ha[d] not served several defendants," so the Court gave plaintiff until
24 January 31, 2011, to "effect proper service on all defendants" (Dkt. No. 48). Ernst & Young
25 LLC, has consistently maintained that it has never been served with proper service of the
26 summons and the complaint (Dkt. Nos. 136 at 3; 145 at 2–4). Plaintiffs contend they effectuated
27 service on "E&Y by no later than February 10, 2011" — if true, this would have been *after*
28 the date permitted by the Court — "by personally delivering to the company's headquarters

6

1 in London[,] . . . copies of the summons and complaint" (Dkt. Nos. 142 at 2; 72-18). More
2 importantly, aside from the deadline, the statement is not accurate.
3       Plaintiffs state they "initiated contact with E&Y regarding service issues in July 2010"
4 (Dkt. No. 142 at 3). On July 21, 2010, William Hammer, Associate General Counsel for Ernst &
5 Young *LLP* in New York, emailed plaintiffs' attorney the following (Dkt. No. 143-1):

> As we discussed on the phone today, the Ernst & Young firm that you are naming as defendant and that you wish to serve is the Isle of Man firm. Accordingly, even though a copy of the complaint was left with the U.S. firm this morning, you confirmed that the U.S. firm is not a party to the litigation and has not been served. I will contact the Isle of Man firm to see if they would like us to facilitate service on them.

10       Plaintiffs' counsel emailed Attorney Hammer to follow up on August 16 and 23 to ask if
11 he had "been authorized to facilitate service" (Dkt. Nos. 143-2; 143-3). Attorney Hammer
12 responded on August 23 asking to talk on August 25 when he would be back in the office (Dkt.
13 No. 143-3). Plaintiffs' counsel emailed again on November 20 to follow up (Dkt. No. 143-4).
14 Attorney Hammer put plaintiffs' counsel in contact with Lisa Cameron, based in the London
15 office. Plaintiffs' counsel emailed Cameron on November 23 and again on November 30 to
16 request that she accept service for the Isle of Man entity (Dkt. Nos. 143-5; 143-6). On
17 December 1, Clare Milner, Legal Counsel for Ernst & Young *LLP* in London, emailed plaintiffs'
18 counsel and stated: "Thank you for your email to Lisa Cameron who has passed it to me to
19 respond to. Having considered the matter fully we would ask that you arrange formal service of
20 your clients' claims" (Dkt. No. 143-7). On February 25, 2011, Cameron emailed plaintiffs'
21 counsel and wrote: "I confirm that although we have in London received a copy of your
22 summons by post this does not, of course, constitute service on the Isle of Man firm. It is not
23 therefore clear why you are sending document requests" (Dkt. No. 143-8). Elaine Whiteford,
24 also Legal Counsel for Ernst & Young *LLP* in London emailed plaintiffs' counsel on February
25 28 and stated: "I note that you indicate that 'the summons and accompanying documents were
26 served on Ernst & Young on February 10, 2011.' Unfortunately, Ernst & Young *LLC* has no
27 record of these documents having been received" (Dkt. No. 143-9) (emphasis added). Plaintiffs'
28 counsel responded the same day and indicated, "I have been in communication regarding this

7

1 lawsuit with multiple people from Ernst & Young's offices in the United States and London. It
2 cannot be disputed that Ernst & Young has known of the pendency of this action for several
3 months" (Dkt. No. 143-10).

4 In short, since at least December 1 of last year — ten months ago — plaintiffs' counsel
5 have been on clear notice that formal service of process on the Isle of Man entity was required.
6 Counsel have utterly failed to effect proper service.

7 The law is clear. "[N]either actual notice nor simply naming the defendant in the
8 complaint will provide personal jurisdiction without *substantial* compliance with Rule 4."
9 *Sec. & Exch. Comm'n*, 504 F.3d at 1140 (emphasis added). Here, the other Ernst & Young
10 entities declined to accept service before December 2, 2010, the date the Court granted plaintiffs
11 an additional sixty days to effect proper service. The proper procedure would have been for
12 plaintiffs' counsel to serve Ernst & Young LLC via the Hague Convention on the Service
13 Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. This was
14 never done (Dkt. No. 136 at 4).

15 Generally, Rule 4 provides that the summons and complaint must be served within 120
16 days of filing of the complaint. This action was filed July 14, 2010, over *fourteen* months ago.
17 We are well into discovery. It is now too late to further delay this case by waiting another six
18 months for plaintiffs' counsel to do what should have been done from the outset.

19 Thus, after supplemental briefing on the issue and plaintiffs' failure to show proper
20 service, as required by Rule 4, the order concludes that plaintiffs have not met their burden under
21 Rule 4 to properly serve the summons and complaint on Ernst & Young LLC.

**3. NO ALTER EGO/AGENCY RELATIONSHIP WITH ERNST & YOUNG GLOBAL ENTITIES.**

Although the order concludes plaintiffs failed to effectuate proper service on Ernst & Young *LLC*, it is necessary to reach a further alternative ground, namely alter ego. This issue relates both to the service of process issue addressed above and to audit year 2005 (since personal jurisdiction has not been shown for that audit year).

Ernst & Young LLC, is a member of the "Ernst & Young Global" umbrella. This umbrella includes numerous worldwide, yet distinct, legal entities. Plaintiffs do not contest this.

8

1  Instead, plaintiffs argue that this order should ignore corporate formalities and consider all Ernst
2  & Young Global entities as the alter ego and/or agent of our defendant Ernst & Young LLC.
3  Then, they argue, this order can find that personal jurisdiction exists over Ernst & Young LLC,
4  and that service was properly effectuated on Ernst & Young LLC because jurisdiction exists over
5  different Ernst & Young umbrella entities and other entities may have been properly served.

Despite the fact that there was no alter ego or agency relationship alleged in the complaint, plaintiffs indicated in their original opposition to the motion to dismiss that this may be their tactic to hale Ernst & Young LLC into court in California.

Our court of appeals has recently stated that:

> Under the controlling law, if one of two separate tests is satisfied, we may find the necessary contacts to support the exercise of personal jurisdiction over a foreign parent company by virtue of its relationship to a subsidiary that has continual operations in the forum. The first test . . . is the "alter ego" test. It is predicated upon a showing of parental control over the subsidiary. The two prongs of the "alter ego" test are as follows:
>
>> (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice. The first prong of this test has alternately been stated as requiring a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former.
>
> *Unocal*, 248 F.3d at 926 (internal citations, quotation marks, and brackets omitted). The second test, which is applicable here, is the "agency" test. That test is predicated upon a showing of the special importance of the services performed by the subsidiary:
>
>> The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.
>
> *Id.* at 928 (quoting *Chan*, 39 F.3d at 1405) (emphasis added) (internal quotation marks omitted); *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). For the agency test, we ask: Are the services provided by [the subsidiary] sufficiently important to [the parent] that, if [the subsidiary] went out of business, [the parent] would continue . . . itself, or alternatively . . . through a new representative? . . . In addition, this test requires the plaintiffs

>to show an element of control, albeit not as much control as is required to satisfy the "alter ego" test.

*Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 920 (9th Cir. 2011) (italics omitted) (holding subsidiary was parent's agent for purposes of personal jurisdiction and as such jurisdiction over parent was proper). At the same time, "a defendant will not be haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party or a third person,'" including a related or affiliated entity. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Again, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger*, 374 F.3d at 800.

Plaintiffs have not met that burden here as to alter ego. There is no evidence in the record that there is any relationship between (i) Ernst & Young LLC, our defendant and the Manx limited liability company, and (ii) Ernst & Young LLP, the English limited liability partnership, or (iii) Ernst & Young LLP, the U.S. limited liability partnership — except that all are members of *a global organization of member firms* practicing under the Ernst & Young Global Limited brand while existing as independent legal entities (Dkt. No. 182-1, Interrogatory Nos. 3–5). Plaintiffs have put forth no evidence whatsoever after jurisdictional discovery that would allow this order to impute the contacts of all Ernst & Young entities to each other for purposes of haling *Ernst & Young LLC*, into court in California or concluding that proper service was effectuated on *Ernst & Young LLC*.

Plaintiffs argue in supplemental briefing that all of the Ernst & Young entities are alter egos and/or agents of each other so Ernst & Young LLC must be subject to personal jurisdiction. In support they include: (1) a page from www.ey.com that states "Ernst & Young is a global leader . . . Worldwide, our 141,000 people are united by our shared values and an unwavering commitment to quality"; (2) a page from www.ey.com that shows a map and states: "Below are the details for our office locations within United States [sic] which is part of our network of Ernst & Young member firms in the Americas area," including locations in California; (3) interrogatory responses; and (4) the engagement letter between Ernst & Young LLC and Eden Rock Finance Fund LP dated July 1, 2005 (Dkt. No. 187).

10

These items do not meet the standards just reviewed. Plaintiffs' complaint includes no allegations concerning alter ego/agency and plaintiffs simply put in no record whatsoever as to the actual relationships between the Ernst & Young entities. This order finds, based on the evidentiary record, that Ernst & Young LLC is a member in a global organization of companies that share a brand name. Thus, this order finds that there is no alter ego or agency relationship between defendant Ernst & Young LLC and any other Ernst & Young entity for our purposes. *See, e.g.*, *Fields v. Sedgwick Associated Risks, Ltd.*, 796 F.2d 299, 302 (9th Cir. 1986) ("Lloyds of London's ties are [] irrelevant to personal jurisdiction over its member syndicates").

Rhetoric from plaintiffs to the contrary is not supported by any allegations or evidence.[*] Plaintiffs point to the audit engagement agreement which *permits* it to use the services of other Ernst & Young Global members in connection with its audits (Dkt. No. 187-4 at 5). Yet, actual jurisdictional discovery responses demonstrate that no U.S.-resources *were* used in the audits at issue *here* (Dkt. No. 182-1, Interrogatory Nos. 1, 2, 6, 9–12, 15, 17–18, 23–26). After given the opportunity to take jurisdictional discovery, plaintiffs have not demonstrated that all Ernst & Young Global entities should be treated as one globally.

Plaintiffs invoke *Cromer Finance Ltd. v. Berger*, 137 F. Supp. 2d 452, 475–76 (S.D.N.Y. 2001), which action alleged violations of the federal securities laws and related state laws, where foreign Ernst & Young-related entities (not our defendant), among others, were sued for their role as *fund administrators* and where these entities were found to be subject to *general jurisdiction* in the United States and where the plaintiffs presented "strong evidence of integration" between the various entities. Plaintiffs have not made such a showing here, not to mention that the claims asserted against Ernst & Young LLC and their alleged role are different as well.

Therefore, on the particular record here presented, this order finds that the corporate veil as to all Ernst & Young entities should not be pierced. Thus, the previous conclusions as to

---

[*] For example, plaintiffs state: "It is inconceivable that E&Y performed its professional obligations without contacting the California general partner, either directly *or by using another arm of E&Y, the worldwide accounting and consulting firm, to assist in performing audit services*" (Dkt. No. 186 at 6). Plaintiffs cite nothing in support, and defendant's discovery responses, reviewed above, directly counter such speculation.

11

1    improper service remain unchanged.  Because proper service was never effectuated on *Ernst &*
2    *Young LLC,* it is dismissed as a defendant from this action.

### CONCLUSION

For these reasons, Ernst & Young LLC's motion to dismiss for lack of proper service is **GRANTED**.

**IT IS SO ORDERED.**



Dated: October 7, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California