GOLD BENNETT CERA & SIDENER LLP
SOLOMON B. CERA (State Bar No. 99467)
GWENDOLYN R. GIBLIN (State Bar No. 181973)
C. ANDREW DIRKSEN (State Bar No. 197378)
595 Market Street, Suite 2300
San Francisco, California 94105
Telephone: (415) 777-2230
Facsimile: (415) 777-5189
scera@gbcslaw.com
ggiblin@gbcslaw.com
cdirksen@gbcslaw.com

COHEN MILSTEIN SELLERS & TOLL PLLC
HERBERT E. MILSTEIN
JOSHUA S. DEVORE
1100 New York Ave., NW
Suite 500, West Tower
Washington, DC 20005-3965
Telephone: (202) 408 4600
Facsimile:  (202) 408-4699
hmilstein@cohenmilstein.com
jdevore@cohenmilstein.com

Attorneys for Plaintiffs
and Certified Classes

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDGAR W. TUTTLE; ERIC BRAUN; THE BRAUN FAMILY TRUST by its co-trustee ERIC BRAUN; and WENDY MEG SIEGEL, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>SKY BELL ASSET MANAGEMENT, LLC, et al.<br><br>                    Defendants. | Case No.: 10-CV-03588 (WHA)<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:        Hon. William Alsup<br>Date:         To Be Determined<br>Time:         2:00 p.m.<br>Courtroom:  No. 9, 19th Floor |

## TABLE OF AUTHORITIES

NOTICE OF MOTION AND MOTION ........................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ............................................................................................... 1

II.     PROCEDURAL BACKGROUND.......................................................................... 2

        A.      This Litigation......................................................................................... 2

        B.      Negotiation Of The Settlement Agreement .......................................... 4

        C.      The Settlement Consideration ............................................................... 5

III.    THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL .... 5

        A.      The Settlement Falls Within The Range Of Possible Approval ............ 6

        B.      The Uncertainty Of Continued Litigation............................................. 8

        C.      The Stage of the Proceedings................................................................. 10

        D.      The Scope Of The Release of Claims Is Reasonable And Bounded By The Claims Asserted.................................................................................................. 10

        E.      The Recovery Process Is Designed To Facilitate Class Member Participation.... 11

        F.      The Analysis Of Counsel ........................................................................ 11

IV.     ANALYSIS OF DAMAGES ................................................................................. 12

        A.      Rothstein Kass Was At Least One Step Removed From the Ponzi Schemes....... 12

        B.      Significant Causation Issues Exist ......................................................... 15

V.      PLAN OF ALLOCATION ................................................................................... 16

VI.     THE PROPOSED FORM OF CLASS NOTICE IS APPROPRIATE ........................... 17

VII.    PROPOSED SCHEDULE .................................................................................... 18

VIII.   CONCLUSION ................................................................................................... 19

## TABLE OF AUTHORITIES

**CASES**

*Armstrong v. Bd. of Sch. Dirs.*
      616 F.2d 305 (7th Cir. 1980) .................................................................................. 6, 7

*Bily v. Arthur Young & Co.*
      3 Cal. 4th 370 (1992) ................................................................................................. 3

*Class Pls. v. Seattle*
      955 F.2d 1268 (9th Cir. 1992) .............................................................................. 6, 17

*CRT Investments, Limited v. Merkin*
      No. 601052/09, 2010 WL 4340433 (N.Y. Sup. Ct. May 5, 2010).................................... 9

*Detroit v. Grinnell Corp.*
      495 F.2d 448 (2d Cir. 1974)......................................................................................... 6

*Fisher Bros. v. Cambridge-Lee Indus.*
      630 F. Supp. 482 (E.D. Pa. 1985) ................................................................................ 7

*Girsh v. Jepson*
      521 F.2d 153 (3d Cir. 1975).................................................................................... 10

*In re Ezra Merkin & BDO Siedman Securities Litigation*
      2011 U.S. Dist. LEXIS 112931 (S.D.N.Y. Sept. 23, 2011)............................................. 9

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*
      MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337 (C.D. Cal. Jun. 10, 1992).............. 7

*In re Tremont Securities Law, State Law and Insurance Litigation*
      703 F. Supp. 2d 362 (S.D.N.Y. 2010)........................................................................... 9

*In re Zoran Corp. Deriv. Litig.*
      2008 U.S. Dist. LEXIS 48246 (N.D. Cal. Apr. 7, 2008) ............................................... 10

*Kirkorian v. Borelli*
      695 F. Supp. 446 (N.D. Cal. 1988) .............................................................................. 7

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.*
      747 F. Supp. 2d 406 (S.D.N.Y. 2010)........................................................................... 9

*Movitz v. First Nat'l Bank of Chicago*
      148 F.3d 760 (7th Cir. 1998) ...................................................................................... 15

*Officers for Justice v. Civil Serv. Comm'n*
      688 F.2d 615 (9th Cir. 1982) .................................................................................... 6, 7

*Protective Comm. For Indep. Stockholders of TMT Trailer Ferrv v. Anderson*
      390 U.S. 414 (1968)............................................................................................... 7, 11

*Reed v. Gen. Motors Corp.*
      703 F.2d 170 (5th Cir. 1983) ....................................................................................... 7

*Shaffer v. Cont'l Cas. Co.*
      No 08-56124, 2010 U.S. App. LEXIS 726 (9th Cir. Jan. 12, 2010)............................... 17

## TABLE OF AUTHORITIES

*Weinberger v. Kendrick*
   698 F.2d 61 (2d Cir. 1982)......................................................................... 7, 11

**STATUTES, RULES AND REGULATIONS**

28 U.S.C. §1332(d)(2) .................................................................................... 2

Federal Rules of Civil Procedure
   Rule 23 ....................................................................................................... 3

   Rule 23(c)(2)(B)....................................................................................... 17

   Rule 23(e)......................................................................................... 5, 6, 17

**OTHER AUTHORITIES**

5 Wm. Moore, et al., *Moore's Federal Practice*
   ¶23.83[1] (3d ed. 2001).............................................................................. 6

Conte & Newberg, *Newberg on Class Actions*
   §8.2 (4th ed. 2002) ................................................................................... 17

*Manual for Complex Litigation* (Fourth)
   §21.633...................................................................................................... 6

*Manual for Complex Litigation*
   §30.41 (3d ed. 1995) ................................................................................. 6

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that at a date and time to be determined, in Courtroom No. 9, 19th Floor, the Honorable William H. Alsup, United States District Judge presiding, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs and class representatives Edgar W. Tuttle, Eric Braun, and The Braun Family Trust, will move this Court, with the concurrence of defendant Rothstein, Kass & Company, P.C., for an order (i) granting preliminary approval of the proposed Settlement set forth in the Settlement Agreement (the "Settlement"); (ii) approving the form and manner of giving notice of the proposed Settlement to the Class (defined below); and (iii) setting a hearing date (the "Settlement Fairness Hearing") to consider final approval of the proposed Settlement and all its terms and elements, including the proposed Plan of Allocation and Class Counsel's request for an award of attorneys' fees and reimbursement of expenses.  This motion is filed pursuant to the Court's Order of April 2, 2012 (ECF No. 339).

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs and class representatives Edgar W. Tuttle, Eric Braun, and The Braun Family Trust, ("Plaintiffs") respectfully submit this motion for preliminary approval of the settlement they have reached with Defendant Rothstein Kass & Company, P.C. ("Rothstein Kass"), which served as the auditor for: (1) Agile Sky Alliance Fund, LP ("Agile Sky"); (2) Night Watch Partners, LP ("Night Watch"); and (3) PipeLine Investors, LP. ("PipeLine") (collectively, the "Limited Partnerships").

## I.   INTRODUCTION

By this motion, Plaintiffs seek preliminary approval of the settlement of their claims against Rothstein Kass[1] on the terms and conditions set forth in the Settlement dated as of April 6, 2012, filed contemporaneously herewith.  The Settlement resolves all claims of Plaintiffs and the Class Members against Rothstein Kass in consideration of the payment of $1,400,000 in cash for the benefit of the Class members.  Plaintiffs and Class Counsel believe that this Settlement, which the parties reached with the assistance of a well-regarded and experienced

---

[1]   Plaintiffs and Rothstein Kass are sometimes collectively referred to as the "Settling Parties."

mediator, is in the best interests of the Classes and represents a reasonable and adequate resolution of this case.  Plaintiffs and Class Counsel therefore respectfully request that the Court preliminarily approve the Settlement and allow notice thereof to be disseminated to Class members.

Specifically, the Settling Parties request that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), submitted contemporaneously herewith.  The Preliminary Approval Order: (i) preliminarily approves the terms of the Settlement; (ii) approves the form and method for providing notice of the Settlement to the Class; (iii) schedules a final Settlement Fairness Hearing at which the Court will consider the request for final approval of the Settlement, the Plan for allocating the Settlement proceeds, as well as Class Counsel's application for an award of attorneys' fees and expenses.

## II.     PROCEDURAL BACKGROUND

### A.     This Litigation

This case has a single remaining defendant facing class claims: Rothstein Kass.  The procedural history below recites the events pertinent to Rothstein Kass.

Plaintiffs initiated this action (the "Action") on July 14, 2010 in the Superior Court of the State of California for the County of San Francisco, by filing a complaint under the caption *Tuttle, et al. v. Sky Bell Asset Management, LLC, et al.*, Case No. CGC-10-501549, which alleged, among other things, that Rothstein Kass aided and abetted breaches of fiduciary duties owed by other defendants (the Limited Partnerships and their general partners) and acted negligently, thereby damaging Plaintiffs.  The action was subsequently removed to this Court and jurisdiction was found pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2) (ECF No.62 ).

1    Rothstein Kass and another auditor defendant[2] thereafter jointly moved to dismiss the

2    amended complaint on February 25, 2011.  The most significant issue raised was whether the

3    Limited Partners had standing to sue the auditors directly, or whether their claims were

4    derivative of those held by the Limited Partnerships themselves.  The seminal case addressing

5    that question is the California Supreme Court's decision in *Bily v. Arthur Young & Co.*, 3 Cal. 4th

6    370 (1992).  *Bily* holds that "an auditor's liability for general negligence in the conduct of an

7    audit of its client financial statements is confined to the client, *i.e.,* the person who contracts for

8    or engages the audit services.  Other persons may not recover on a pure negligence theory."  *Bily,*

9    3 Cal. 4th at 406.  A footnote in *Bily* suggested that "[i]n theory, there is an additional class of

10    persons who may be the practical and legal equivalent of 'clients.'  It is possible the audit

11    engagement contract might expressly identify a particular third party or parties so as to make

12    them express third party beneficiaries of the contract.  Third party beneficiaries may under

13    appropriate circumstances possess the rights of parties to the contract."  *Bily,* 3 Cal. 4th at 406

14    n.16.  Plaintiffs ultimately prevailed on their *Bily* argument that they were express third party

15    beneficiaries of Rothstein Kass's engagement agreements with the Limited Partnerships (ECF

16    No. 154), allowing them to pursue the claim for professional negligence against Rothstein Kass.

17    The Court subsequently determined that as to three (3) Limited Partnerships for which

18    Rothstein Kass rendered audit services, the requirements for class certification pursuant to

19    Rule 23, Fed.R.Civ.P. were met.  ECF Nos. 264, 317.  The certified Classes consist of the

20    investors in: (1) Agile Sky; (2) Night Watch; and (3) PipeLine.  More specifically, the Court

21    certified Classes consisting of:

22          All persons or entities that held a limited partnership interest in
           Agile Sky Alliance Fund, LP, Night Watch Partners, LP, and/or
23          PipeLine Investors, LP during the time period Rothstein Kass &
           Company, PC, provided accounting services or conducted audits
24          of Agile Sky Alliance Fund, LP's, Night Watch Partners, LP,

25    _____

26    [2]   That auditor defendant, McGladrey & Pullen, LLP, audited only one of the Sky Bell limited
     partnerships, Wailea Partners, which had only about a dozen investors.  The Court ultimately
27    denied class certification as to that limited partnership due to the small number of investors.
     ECF No. 264 at 6:17-18.

28

and/or PipeLine Investors, LP's financial statements, including anyone who has acquired claims against Rothstein Kass & Company, PC, arising out of such accounting and auditing services during said period.  Excluded from the Class are defendants, the officers, directors, and agents of the defendants, as well as members of their families, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest, and any of the above named individuals or entities who timely opt out.

ECF No. 317.

### B.   Negotiation Of The Settlement Agreement

Following significant motion practice as described above, the completion of substantial discovery, and certification of classes and appointment of Class Counsel, the parties determined that the case was ripe for exploring possible settlement scenarios with the assistance of a skilled mediator.  Cognizant of the Court's Memorandum Opinion Regarding Factors to be Evaluated for any Proposed Class Settlement (ECF No. 66), the parties agreed that all such discussions should be conducted through the Hon. Gary L. Taylor (Ret.) of JAMS.  Judge Taylor has nearly 20 years of judicial service, including 15 years as a United States District Court Judge for the Central District of California.[3]  He has presided over both class action cases and complex securities and business actions as a federal judge during his tenure on the bench.  Following retirement from the federal bench, Judge Taylor associated with JAMS, where he has served as a mediator and arbitrator for seven (7) years, handling numerous complex matters.

On March 2, 2012, Judge Taylor presided over a voluntary, non-binding mediation to attempt to resolve the disputes between Plaintiffs and Rothstein Kass.  In addition to the parties' confidential mediation briefs, Judge Taylor was provided with the pertinent Orders entered in this case including, but not limited to, the Court's Memorandum of Opinion Regarding Factors to be Evaluated for any Proposed Class Settlement (ECF No. 66); the Supplemental Order to Order Setting Initial Case Management Conference in Civil Cases before Judge Alsup (ECF No. 4); the

---

[3]   Judge Taylor has authorized Class Counsel to submit to the Court his letter dated March 29, 2012, attached hereto as Exhibit 1.

Second Amended Case Management Order (ECF No. 69); the Order Conditionally Granting Class Certification (ECF No. 264); and the Order Partially Granting Motion for Class Certification (ECF No. 317).  Judge Taylor was also provided with the operative Fourth Amended Complaint (ECF No. 269) and Rothstein Kass's Answer (ECF No. 273).

Following a full day, in-person mediation session, Judge Taylor engaged in a number of follow-up telephonic sessions with counsel.  Judge Taylor ultimately made a mediator's proposal to both sides, indicating that he viewed his proposal as an appropriate settlement based on his consideration of the strengths and weaknesses of each side's position, the evidence, the damages, and the applicable law.  The mediator's proposal was accepted in concept by the parties on Thursday evening, March 15, 2012.

### C.    The Settlement Consideration

The Settlement provides for Rothstein Kass to cause the payment of $1,400,000 in cash (the "Settlement Fund") for the benefit of the members of the certified Classes in full satisfaction of all claims against the accounting firm.  The Settlement Fund will be deposited into an interest bearing escrow account within ten (10) business days of entry of the Preliminary Approval Order.  In exchange for the Settlement consideration, the Classes would release all claims or causes of action, whether based on federal or state law that: (i) were or could have been asserted by Plaintiffs in this Litigation or arising out of the facts of this Litigation, either directly or through assignment as against Rothstein Kass, its parents, subsidiaries and affiliates, and their principals, employees, agents, attorneys, and insurers; and/or (ii) included within the class definition.

## III.    THE SETTLEMENT MEETS THE CRITERIA FOR PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims.  Approval of a class action settlement involves two steps:

> First, counsel submit the proposed terms of the settlement and the court makes a preliminary fairness evaluation . . . .  If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies . . . the

> court should direct that notice under Rule 23(c) be given to the
> class members of a formal fairness hearing, at which arguments
> and evidence may be presented in support of and in opposition to
> the settlement.

*Manual for Complex Litigation*, §30.41, at 236-37 (3d ed. 1995).  The instant motion requests that the Court preliminarily approve the Settlement, authorize Plaintiffs to disseminate notice to the Class, and set a date for the final Fairness Hearing.

Preliminary approval does not require a final determination that a settlement is fair, reasonable, and adequate; that decision occurs at the final approval stage after class members have received notice of the settlement.  *See* 5 Wm. Moore, et al., *Moore's Federal Practice*, ¶23.83[1], 23-336.2 - 23-339 (3d ed. 2001).  The Court also need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute (*Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974)) or engage in a trial on the merits (*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  Preliminary approval of a settlement should be granted if the settlement is within the range of what could be found "fair, adequate and reasonable" so that notice may be given to the proposed class and a hearing for final approval can be scheduled.  *Class Pls. v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Unless the Court's initial examination "disclose[s] grounds to doubt its fairness or other obvious deficiencies," the Court should order that notice of a formal fairness hearing be given to the settlement class members under Rule 23(e).  *See Manual for Complex Litigation* (Fourth) §21.633 at 321-22.  Here, the proposed Settlement is "within the range of possible approval" (*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 310 (7th Cir. 1980)), given the facts, legal complexities, and damages at issue.

## A.   The Settlement Falls Within The Range Of Possible Approval

Class Counsel, in consultation with the Class Representatives, exercised their judgment in agreeing to the mediator's proposal based on extensive knowledge of the facts of the case and the legal issues facing the Classes, as well as judgments about the strengths and weaknesses of the case.  After a detailed analysis, Class Counsel determined that the terms of the Settlement are

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; MEMO IN SUPPORT THEREOF - CASE NO. 10-CV-03588 (WHA) #125678

6

fair, just, and reasonable.  That evaluation was based on the knowledge gleaned from the

extensive litigation and discovery that has occurred.  Specifically, very substantial document

discovery has occurred from February 2011 to the present, which has helped to inform the parties

about the relative strength of their legal claims and defenses.  The parties and third parties have

produced more than 600,000 documents in this litigation.  Depositions, including those of the

Plaintiffs and auditors from Rothstein Kass have been conducted.  In addition, Plaintiffs retained

a respected and experienced expert in auditor liability and damages, Richard W. Millman.  Mr.

Millman's opinion on damages, as requested in the March 23, 2012 Order (ECF No. 335), is

attached hereto as Exhibit 2.

Courts recognize that the opinion of experienced counsel supporting the settlement is

entitled to considerable weight.  *See, e.g., In re First Capital Holdings Corp. Fin. Prods. Sec.*

*Litig.*, MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, *8 (C.D. Cal. Jun. 10, 1992)

(finding belief of counsel that the proposed settlement represented the most beneficial result for

the class to be a compelling factor in approving settlement).[4]  Here, Class Counsel are Cohen

Milstein Sellers & Toll PLLC and Gold Bennett Cera & Sidener LLP, firms which have decades

of experience litigating complex securities-related class action cases.

The question of whether a proposed settlement is fair, reasonable, and adequate

necessarily requires a judgment and evaluation by the attorneys for the parties based upon a

comparison of "'the terms of the compromise with the likely rewards of litigation.'"

*Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. For Indep. Stockholders of TMT Trailer*

*Ferrv v. Anderson*, 390 U.S. 414, 424-25 (1968)).  An evaluation of the costs and benefits of

settlement must also be tempered by recognizing that any compromise involves concessions on

the part of all of the settling parties.  Indeed, "the very essence of a settlement is compromise, 'a

yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624

---

[4]   *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988); *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983); *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Armstrong*, 616 F.2d at 325; *Fisher Bros. v. Cambridge-Lee Indus.*, 630 F. Supp. 482, 489 (E.D. Pa. 1985).

(citation omitted).  In this case, Plaintiffs have obtained a very favorable settlement in a case presenting unique factual and legal complexities.

**B.**     **The Uncertainty Of Continued Litigation**

Though a final determination of whether the Settlement passes muster as fair, reasonable, and adequate is not done in connection with the preliminary approval motion, sufficient grounds exist for the Class to receive notice of the Settlement and the date of the Fairness Hearing.  At the time the Settlement was reached, discovery was nearly complete.  Class Counsel were well positioned to evaluate the merits of the proposed Settlement, and Class Counsel believe that the amount of the proposed Settlement is fair, adequate, and reasonable, given the real possibility that Plaintiffs might not prevail at summary judgment or trial and that, even if they were successful, the risk of appeal and potential delay of additional years would not justify risking further litigation in the face of a tangible benefit to the Classes at this time.  Moreover, even if Plaintiffs were to prevail and be able to collect a judgment, any damages awarded might be much smaller than those that Plaintiffs seek.  By contrast, the proposed Settlement, if approved, provides an assured all-cash benefit to Class members in the near future.[5]

The claims advanced by the Class involve numerous complex legal and factual issues and Class Counsel recognizes the substantial difficulties in prosecuting this case before a jury.  There can be no dispute that this is an exceedingly difficult case for Plaintiffs on the merits.  Plaintiffs invested in the Limited Partnerships, which were audited by Rothstein Kass.  However, the losses incurred by Plaintiffs that are at the heart of this litigation were incurred in **other** investee partnerships that the Limited Partnerships invested in, which had themselves invested in Ponzi schemes run by Thomas J. Petters and Bernard L. Madoff.  Rothstein Kass did not audit the investee partnerships.  Indeed, Rothstein was at least one step removed from the investee partnerships, which turned out to have placed money in Ponzi schemes.  Claims against auditors are inherently difficult to begin with.  Here, Class Counsel are unaware of any cases in the

---

[5]     The extreme difficulty and risks involved in this litigation are supported by the fact that there are no other cases filed by any Class members in any court in the country that Class Counsel are aware of arising out of the losses incurred by Agile Sky, Night Watch, and/or PipeLine.

1    country where auditor liability has been imposed in the factual scenario presented here, where

2    the funds to which the auditor provided services invested in other third party funds which were

3    invested in the Ponzi schemes.  Viewed in this light, the recovery in this case against  Rothstein

4    Kass is noteworthy.

5          Indeed, no court has required the auditor of a fund-of-funds to perform any other or

6    different audit procedures on an investee fund.  In *Meridian Horizon Fund, LP v. Tremont Group*

7    *Holdings, Inc.*, 747 F. Supp. 2d 406, 413 (S.D.N.Y. 2010), the court found most critical that

8    Plaintiffs' allegations of GAAS violations were "even less meaningful because neither KPMG

9    nor KPMG Cayman was hired to audit Madoff's businesses or to issue an opinion the financial

10   statements of [his firm] BMIS.  Rather, KPMG and KPMG Cayman's only role was to audit the

11   financial statements of the XL Funds."  The court reasoned that there was no basis, and it would

12   be unprecedented, to require an audit firm engaged to audit the financials of one client, the

13   Funds, to conduct an audit of a third party that is not an audit client on whose financial

14   statements the auditor expresses no opinion.  *See also In re Tremont Securities Law, State Law*

15   *and Insurance Litigation*, 703 F. Supp. 2d 362 (S.D.N.Y. 2010); *CRT Investments, Limited v.*

16   *Merkin*, No. 601052/09, 2010 WL 4340433, at *13 (N.Y. Sup. Ct. May 5, 2010) ("BDO

17   Seidman, like KPMG, was not hired to audit Madoff's business, or to issue an opinion on

18   Madoff's or BMIS's financial statements.  Its only role was to audit the financial statements of

19   Ascot Partners and Gabriel Capital Partners."), *aff'd*, 925 N.Y.S. 2d 439 (N.Y. App. Div. 2011).

20   Nor have courts held that auditors such as Rothstein Kass may be held liable for the failure to

21   uncover the Ponzi schemes here at issue.  As stated in *In re Tremont Securities Law, State Law*

22   *and Insurance Litigation*, 703 F. Supp. 2d at 371: "Rather than plaintiffs' proposed inference that

23   the Auditors did not comply with GAAS because they ignored 'red flag' warnings and failed to

24   uncover the Ponzi scheme, the more compelling inference as to why Madoff's fraud went

25   undetected for two decades was his proficiency in covering up his scheme and eluding the SEC

26   and other financial professionals."  *See also In re Ezra Merkin & BDO Siedman Securities*

27   *Litigation*, 2011 U.S. Dist. LEXIS 112931 (S.D.N.Y. Sept. 23, 2011) ("it is now well-established

28   that Madoff cleverly leverages his considerable reputation in order to perpetuate his massive

1   fraud, for many years, without detection by some of the most sophisticated entities in the

2   financial world; the SEC, Wall Street banks, and the like").

3       Of course, Rothstein Kass took the position that there were no accounting errors and its

4   audits complied with all applicable standards.  Moreover, as discussed more fully below, it

5   asserted that Plaintiffs could show no compensable damages.  These considerations militate in

6   support of granting preliminary approval.

7       **C.**     **The Stage of the Proceedings**

8       "'[T]he stage of the proceedings'" is one factor considered by courts when determining

9   the fairness of a settlement.  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) (citation omitted).

10  Here, the proposed Settlement was reached after more than two years of litigation, after

11  substantial merits discovery was completed, as well as consultation with and receipt of expert

12  opinions, and just three months before trial.  When the Settlement was reached, Class Counsel

13  had a clear understanding of the strengths and weaknesses of the Class' claims.  While Plaintiffs

14  believe their claims would survive a summary judgment motion by Rothstein Kass, there is a risk

15  that they may not and, further, there can be no legitimate dispute that there is substantial risk that

16  Plaintiffs would recover at trial far less than the settlement amount, or possibly have a jury enter

17  a judgment in Rothstein Kass's favor.

18      **D.**     **The Scope Of The Release of Claims Is Reasonable And Bounded By The**
19              **Claims Asserted**

20      This Court has ruled that "released claims should only be those made in the . . . complaint

21  and those closely related thereto."  *In re Zoran Corp. Deriv. Litig.*, 2008 U.S. Dist. LEXIS

22  48246, at *31 (N.D. Cal. Apr. 7, 2008).  Here, the parties have limited the release of claims

23  resolved by the Settlement to satisfy this standard.  Paragraph 15 of the Settlement provides that

24  the Class will "release all claims or causes of action, whether based on federal or state law that:

25  (i) were or could have been asserted by Plaintiffs in this Litigation or arising out of the facts of

26  this Litigation, either directly or through assignment as against Rothstein Kass, its parents,

27  subsidiaries and affiliates, and their principals, employees, agents, attorneys, and insurers; and/or

28  (ii) included within the class definition."  This release comports with the Court's guidance.

**E.    The Recovery Process Is Designed To Facilitate Class Member Participation**

As noted by this Court in its Memorandum Opinion Regarding Factors to be Evaluated for any Proposed Class Settlement ("Settlement Factors Order") ("ECF No. 66), "[a] settlement that imposes a claim procedure rather than cutting checks to class members for the appropriate amount may impose too much of a burden on class members, especially if the procedure is onerous . . . The best approach is to calculate settlement checks from defendant's records (plus due diligence by counsel) and to send the checks to the class members along with a notice that cashing the checks will be deemed acceptance of the release and all other terms of the settlement." *Id.* at ¶7.  Class Counsel is proposing to follow this precise approach here.  Based on Limited Partnership records, the Claims Administrator, Gilardi & Co., will determine the invested net capital of each Class member as compared with the total capital contributed to the Limited Partnerships, to arrive at a percentage interest in the Settlement Fund for each Class member.  This information will be conveyed to Class members who will have a period of ten (10) days to challenge the information.  If the matter cannot be informally resolved, Class members shall have a right to have their challenge heard by the Court.  Accordingly, there will be no claim forms utilized in this action.

**F.    The Analysis Of Counsel**

The question of whether a proposed settlement is fair, reasonable, and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "'the terms of the compromise with the likely rewards of litigation.'" *Weinberger*, 698 F.2d at 73 (quoting *Protective Comm. For Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968).  An evaluation of the costs and benefits of settlement must also be tempered by recognizing that any compromise involves concessions on the part of all of the settling parties.  Giving considerable weight to the views of experienced class counsel is especially appropriate here because of Class Counsel's intimate familiarity with the facts of this action as well as the legal issues.  As a result of their persistent litigation of this case, and their knowledge of the relevant facts and law, Class Counsel negotiated a favorable result for the Class that they firmly believe represents a fair resolution of the action for the Class.

Moreover, as discussed above, the proposed Settlement was the product of a mediator's proposal made by Judge Taylor (Ret.).  This further supports Class Counsel's analysis that the Settlement amount is appropriate.

## IV.   ANALYSIS OF DAMAGES

### A.   Rothstein Kass Was At Least One Step Removed From the Ponzi Schemes

Hedge funds, particularly funds-of-funds like those at issues in this case, present accounting and valuation challenges not seen with a company that trades publicly and makes quarterly filings with the Securities and Exchange Commission.  Hedge funds carry inherent risks beyond those typically found in more heavily regulated investments.  Those investing in hedge funds presumably understand that, along with the potential for greater than average returns, the investments also have the potential for greater than average losses and may be less liquid than market-traded securities.

While it now appears that the general partners were not the investment gurus they claimed to be, the claims that remain in this lawsuit do not seek to recover damages resulting from their failed investment strategy by placing investor funds in the Sky Bell hedge funds.  Instead, Plaintiffs seek recovery of the money placed into Ponzi schemes that, under any investment strategy, are always inappropriate investments.  The damages in this litigation relate to the Ponzi losses, *i.e.*, the Class Members' investments that vanished because (unbeknownst to the Class Members) they fed into pyramid schemes involving phantom investments.

It was only after obtaining and scrutinizing hundreds of thousands of documents received in discovery that Class Counsel and Plaintiffs' expert were able to determine the nature and amount of Ponzi losses.  As part of the discovery process, Class Counsel conducted a careful review of the audit reports at issue, underlying audit workpapers, and other financial documents originating from the investee partnerships where the Ponzi losses occurred.  The review included several of the funds-of-funds that served as intermediaries between the Class members' initial investments in Agile Sky, Night Watch, and PipeLine, and the eventual transfer of money to Ponzi schemes through the investee partnerships, including:

   o   Lancelot Investors Fund LP

1     o     Palm Beach Diversified Income LP

2     o     Palm Beach Finance Partners LP

3     o     Palm Beach Finance Partners II

4     o     Palm Beach Strategic Opportunity Fund

5     o     Rye Select Broad Market Prime

The audit reports for these funds are not publicly available and were not available to the Class members prior to this litigation.

Based on an extensive review of these and other documents, it can now be determined how much of the Class members' money fed into Ponzi funds associated with the now-imprisoned Thomas Petters, such as Lancelot Investors Fund LP, Palm Beach Diversified Income LP, Palm Beach Finance Partners LP, Palm Beach Finance Partners II, Palm Beach Strategic Fund.  In addition to the Petters-affiliated funds, a small amount of Night Watch's capital was also invested in funds associated with Bernard Madoff, including Rye Select Broad Market Prime and Rye Select Broad Market.

As discussed in the expert opinion of Plaintiffs' auditing and damages expert, Richard W. Millman, attached as Exhibit 2, Plaintiffs believe they would be able to present a case at trial demonstrating that Rothstein Kass acted negligently with regard to the Agile Sky, Night Watch, and PipeLine audits.  However, Rothstein Kass's potential liability would be limited to the audit work related to the specific investments made by Agile Sky, Night Watch, and PipeLine into other investee partnerships which, in turn, invested in the Petters or Madoff Ponzi schemes that were disclosed in late 2008.  Although Agile Sky, Night Watch, and PipeLine invested in many other partnerships, only a small number of those partnerships were involved in Ponzi scheme frauds.

The audit workpapers show that the other partnerships in which Agile Sky, Night Watch, and PipeLine invested (the "non-Ponzi partnerships") were not tainted by any Ponzi fraud.  The returns in the non-Ponzi partnerships were disappointing to Class Members.  However, based on documents produced in the discovery process, Plaintiffs' expert determined that Rothstein Kass could not be criticized for market-related losses.

In addition, the evidence shows that Rothstein Kass had no role in selecting the investments in the non-Ponzi partnerships.  Those decisions were made by general partners of Agile Sky, Night Watch, and PipeLine.  Accordingly, Rothstein Kass argued that, as the independent public accountant for Agile Sky, Night Watch, and PipeLine, it had no professional duty to investigate the investee partnerships before the Agile Sky, Night Watch, and PipeLine partnerships initially determined that they were appropriate investments for those partnerships. In conducting its audits, Rothstein Kass was required to, *inter alia*, verify the existence and valuation of Agile Sky, Night Watch, and PipeLine's investments in other partnerships. However, Plaintiffs' expert was only able to opine that Rothstein Kass's performance was arguably inadequate as to the partnerships invested in Ponzi schemes.  Moreover, several other participants would likely be deemed responsible, at least in some measure, for the losses incurred as a result of the Ponzi scheme investments of the investee partnerships.  This includes Agile Sky, Night Watch, and PipeLine; their general partners; the investee partnerships that directly put money in the Ponzi schemes; the auditors of the investee partnerships (who were not Rothstein Kass); as well as Petters and Madoff.

While not dispositive, these facts significantly increase the challenges Plaintiffs would face in order to prevail at the summary judgment phase, and ultimately prove their case at trial and recover substantial damages.  Even if Plaintiffs could establish that Rothstein Kass did not fulfill its obligations as an independent auditor, the complexity and multiple-levels of transactions involved may raise substantial questions about causation in jurors' minds. Inevitably, if Plaintiffs were to obtain a favorable jury verdict, which is far from certain, they would face the prospect of an appeal that would raise many difficult and unique legal issues and which may take years to resolve and which might ultimately result in an appellate decision in Rothstein Kass's favor.

Accordingly, the settlement amount of $1,400,000, which equates to slightly more than 7% of the estimated full potential damages recoverable on a joint and several liability basis, if Plaintiffs were to survive summary judgment, succeed at trial, and be awarded damages based on Plaintiffs' "best case" scenario, is reasonable, especially considering that the much likelier

1    scenario is that Plaintiffs' recoverable damages from Rothstein Kass is an amount less than the

2    full Ponzi losses.[6]

3        **B.    Significant Causation Issues Exist**

4        Rothstein Kass has consistently argued that the Class members' claims lack the requisite

5    causal connection between the alleged harm and the alleged damages.  *Movitz v. First Nat'l Bank*

6    *of Chicago*, 148 F.3d 760, 763 (7th Cir. 1998) ("The requirement of proving loss causation is a

7    general requirement of tort law.").  It maintains that Plaintiffs cannot demonstrate how Rothstein

8    Kass's alleged audit failures led to any damages to investors or, alternatively, what action

9    Rothstein could or should have taken to prevent damages.  Rather, Rothstein Kass maintains that

10   any losses resulted from unknown and hidden Ponzi frauds that not even the SEC could uncover.

11       Rothstein Kass also makes the argument that Plaintiffs' damages should not be measured

12   as of the dates the Petters and Madoff Ponzi schemes were announced in late 2008.  In Rothstein

13   Kass's view, Plaintiffs suffered no monetary loss as a result of the Limited Partnerships'

14   investments in the funds-of-funds that invested in the Ponzi schemes that was or could have been

15   caused by Rothstein Kass.  It contends that Plaintiffs' calculations based on Ponzi losses are

16   overly simplistic and that damages should be measured by a comparison of Plaintiffs' economic

17   position if the harmful event had not occurred and Plaintiffs' actual economic position.  Under

18   that analysis, the harmful event presumably would be Rothstein Kass's sign-off on its audits,

19   combined with the failure of either Rothstein Kass or the general partners to discover and expose

20   the fraudulent nature of the Ponzi schemes.  If Rothstein Kass had not signed unqualified audit

21   opinions and a revelation of potential wrongdoing had been made, regulatory agencies may have

22   shut down the Ponzi schemes.  The Limited Partnerships would not have been able to invest in or

23   withdraw from the Ponzi schemes thereafter.  Thus, according to Rothstein Kass, the amount of

24   _____

25   [6]   Similar recoveries have been found to be reasonable.  *In re LDK Solar Sec. Litig.*, C 07-
     05182 WHA, 2010 WL 598361 (N.D. Cal. Feb. 17, 2010) (approved $16 million settlement with
26   estimated damages of $293 million, or 5.5%); *In re Critical Path, Inc.*, C 01-00551 WHA, 2002
     WL 32627559 (N.D. Cal. June 18, 2002) (approved settlement of 8.75% of estimated damages);
27   *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approved
     settlement of 9% of estimated damages before attorneys fees, 6% after).
28

additional fund investments in excess of withdrawals, *i.e.,* "cash in" in excess of "cash out" *after* the dates on which Rothstein Kass signed-off represents the actual damages.  Based on this analysis, Rothstein Kass claims that damages are zero for each of the Limited Partnerships:

  o  PipeLine invested briefly in the Petters schemes in 2005 and never invested (directly or indirectly) in the Madoff funds.  PipeLine allegedly redeemed these investments *before* Rothstein Kass signed-off on the audit and *before* the Petters fraud was revealed.  Thus, Rothstein Kass claims PipeLine's investors' damages are zero.

  o  Night Watch also invested in the Petters schemes and never invested (directly or indirectly) in the Madoff funds.  Rothstein Kass first signed-off on a Night Watch audit on June 15, 2005.  At that time, Rothstein Kass asserts Night Watch's withdrawals from the Ponzi partnerships exceeded its investments, again resulting in zero damages.

  o  Agile Sky indirectly invested in both the Petters and Madoff schemes.  Rothstein Kass first signed off on its audit on June 14, 2006, at which time Agile Sky's withdrawals exceeded its investments, *i.e,* again giving rise to Rothstein Kass's claims of no damages.

  Plaintiffs strongly disagree with Rothstein Kass's approach to the calculation of damages.  However, it is possible that Rothstein Kass could make a persuasive argument convincing a jury that Plaintiffs were speculative investors who lost money in risky ventures and whose losses were not caused by Rothstein Kass, but rather by the fraud of others.  Particularly because Rothstein Kass signed-off on the audits long before the Petters or Madoff fraud became public, a jury may see this approach to damages as a way to allow Rothstein Kass to avoid liability for the Ponzi schemes disclosed in late 2008.  Thus, based on the parties' significantly divergent views on damages, the settlement is clearly reasonable and merits preliminary approval.

## V.  **PLAN OF ALLOCATION**

  The Notice reflects a straightforward and fair means for the allocation of the settlement fund among Class members.  The settlement funds shall first be allocated on a percentage basis

NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; MEMO IN SUPPORT THEREOF - CASE NO. 10-CV-03588 (WHA)
#125678

16

between Agile Sky, Night Watch, and PipeLine based on Plaintiffs' expert's determination of the amount of Ponzi losses in each partnership, to determine the portion of the total settlement fund available to Class members in a particular partnership.  *See* Exhibit 2 hereto at 5.  Each Class member's invested net capital (*i.e.* amount invested less any redemptions or distributions received) shall then be divided by the total partnership capital in the respective partnership, to determine the particular Class member's percentage economic interest.  That Class member will then be entitled to his/her/its percentage share of the settlement fund allocated to the partnership he/she/it invested in.

As noted, Class members will not have to submit claim forms.  They will be informed of their percentage interest, will be given a right to challenge that determination, and if there is a dispute that cannot be resolved, will be permitted to present the dispute to the Court for resolution.

The foregoing plan for allocating the settlement fund represents a reasonable and fair method for compensating Class members.  Accordingly, the Plan for allocating the settlement funds should be approved.

## VI.   THE PROPOSED FORM OF CLASS NOTICE IS APPROPRIATE

Under Rule 23(e) of the Federal Rules of Civil Procedure, before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the court, and judicial approval must be obtained.  The issue of whether a proposed settlement should be approved is within the sound discretion of the district court, which should be exercised in the context of public policy strongly favoring the pretrial settlement of class action lawsuits.  *See Shaffer v. Cont'l Cas. Co.*, No 08-56124, 2010 U.S. App. LEXIS 726, *3 (9th Cir. Jan. 12, 2010); *Class Pls.*, 955 F.2d at 1276.

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see also* Conte & Newberg, *Newberg on Class Actions*, §8.2 at 162-65 (4th ed. 2002).  Class Counsel proposes that the Claims Administrator mail the Notice of Pendency of Class Action and Proposed Settlement (the "Notice") by first

class mail to the last known addresses of all persons and entities identified in the records of the Limited Partnerships as Class members.  The Notice would also be posted on the Claims Administrator's website.  The identities of the Class Members and their last known addresses appear in documents produced by the Fund Defendants and the successor auditor, as previously identified.  ECF No. 326.  Consistent with the Claims Administrator's usual practices, they will seek out updated addresses for any returned undeliverable mail.  This proposed notice program satisfies due process because it entails the use of reasonable efforts to inform Class Members of the pendency of this case.  The Notice (Ex. 1 to Ex. A to the Settlement Agreement) also clearly sets forth what is required to either opt out or object to any aspect of the proposed settlement.

## VII.   PROPOSED SCHEDULE

In connection with preliminary approval of the Settlement, the Court must set dates for a final fairness hearing, for mailing the Notice, for Class members to object to the Settlement, for Class members to exclude themselves from the Class, and for briefing related to the final approval of the settlement and for Class Counsel to submit its motion for attorneys' fees and reimbursement of expenses.  Class Counsel propose the following schedule:

| Event | Timing |
|---|---|
| Deadline for Claims Administrator to mail the Class Notice to Class Members | 15 days after entry of an Order granting preliminary approval |
| Deadline for Claims Administrator to mail letter to each Class Member identifying his/her/its estimated recovery from the Settlement Fund | 30 days after entry of an Order granting preliminary approval of the Settlement and Notice of the Final Approval Hearing |
| Deadline for any Class Member to inform the Claims Administrator of disagreement with the determination of his/her/its estimated recovery from the Settlement Fund (though the disagreement need not be resolved by this date) | 40 days after entry of an Order granting preliminary approval of the Settlement and Notice of the Final Approval Hearing |

| Deadline for Claims Administrator to provide declarations regarding compliance with Notice requirements | 45 days before the Settlement Fairness Hearing |
|---|---|
| Deadline for Class Members to submit Requests for Exclusion from the Class | 42 days before the Settlement Fairness Hearing |
| Deadline for Class Counsel's application for an award of attorneys' fees and reimbursement of expenses | 42 days before the Settlement Fairness Hearing |
| Deadline for Class Members to submit objections or requests to appear at Settlement Fairness Hearing | 28 days before the Settlement Fairness Hearing |
| Deadline for Class Counsel's response to any objections to the Settlement, the Plan of Allocation, or application for an award of attorneys' fees and expenses | 14 days before the Settlement Fairness Hearing |
| Settlement Fairness Hearing | Not less than 120 days after entry of preliminary approval |

## VIII.  CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that their unopposed Motion for Preliminary Approval of Settlement be granted.

Dated:  April 6, 2012          GOLD BENNETT CERA & SIDENER LLP

By: _____ /s/Solomon B. Cera _____
Solomon B. Cera

- and -

COHEN MILSTEIN SELLERS & TOLL PLLC

By: _____ /s/Herbert E. Milstein _____
Herbert E. Milstein

Attorneys for Plaintiffs
and Certified Classes